**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ALLEN ROBERTSON ANTHONY BELL; | ) | CIVIL ACTION NO. 23-1494 |
| DANIEL BLANK; SCOTT BOURQUE; DAVID | ) | |
| BOWIE; QUINCY BROADEN; HENRI | ) | |
| BROADWAY; DAVID BROWN; GREGORY | ) | JUDGE: |
| BROWN; LADERRICK CAMPBELL; JEFFREY | ) | |
| CLARK; SEDWRIC CLARK; NATHANIEL | ) | |
| CODE; MICHAEL COOKS; JAMES COPELAND; | ) | |
| FRANK COSEY; KEVIN DAIGLE; PERCY | ) | MAG JUDGE: |
| DAVIS; CURTIS DEAL; CLIFFORD DERUISE; | ) | |
| FELTON DORSEY; DARRELL DRAUGHN; | ) | |
| JIMMY DUNCAN; JAMES DUNN; WINTHROP | ) | |
| EATON CEDRIC EDWARDS; ANTOINETTE | ) | |
| FRANK; MICHAEL GARCIA; BOBBY | ) | |
| HAMPTON; CLARENCE HARRIS; JESSIE | ) | |
| HOFFMAN; DACARIUS HOLLIDAY; DANIEL | ) | |
| IRISH; KYLE JOEKEL; GLYNN JUNIORS; | ) | |
| TRACY LEE; DONALD LEGER; JULIUS | ) | |
| LUCKY; JEREMIAH MANNING; JESSE | ) | |
| MONTEJO; LEE ROY ODENBAUGH; MANUEL | ) | |
| ORTIZ; MARCUS REED; JASON REEVES; | ) | |
| LARRY ROY; CHRIS SEPULVADO; WILLIE; | ) | |
| TART; ANTOINE TATE; EMMETT TAYLOR; | ) | |
| MICHAEL TAYLOR; LAMONDRE TUCKER; | ) | |
| JAMES TYLER; TODD WESSINGER; | ) | |
| AND DONALD WRIGHT | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOUISIANA BOARD OF PARDONS | ) | |
| SHERYL RANATZA, Chairwoman | ) | |
| CURTIS FREMIN | ) | |
| ALVIN ROCHE' | ) | |
| ANTHONY MARABELLA | ) | |
| BONNIE JACKSON | ) | |
| *Defendants* | ) | |

**CIVIL RIGHTS COMPLAINT FOR PRELIMINARY AND PERMANENT
INJUNCTIONS TO ENJOIN THE LOUISIANA BOARD OF PARDONS FROM
VIOLATING THE CIVIL RIGHTS OF DEATH ROW INMATES BY CANCELLING
THEIR CLEMENCY HEARINGS**

Plaintiffs Allen Robertson, Anthony Bell; Daniel Blank; Scott Bourque; David Bowie; Quincy Broaden; Henri Broadway; David Brown; Gregory Brown; Laderrick Campbell; Jeffrey Clark; Sedwric Clark; Nathaniel Code; Michael Cooks; James Copeland; Frank Cosey; Kevin Daigle; Percy Davis; Curtis Deal; Clifford Deruise, Felton Dorsey; Darrell Draughn; Jimmy Duncan; James Dunn; Winthrop Eaton; Cedric Edwards; Antoinette Frank, Michael Garcia; Bobby Hampton; Clarence Harris; Jessie Hoffman; Dacarius Holliday; Daniel Irish, Kyle Joekel; Glynn Juniors; Tracy Lee; Donald Leger; Julius Lucky; Jeremiah Manning; Jesse Montejo; Lee Roy Odenbaugh; Manuel Ortiz; Marcus Reed; Jason Reeves; Larry Roy; Chris Sepulvado; Willie Tart; Antoine Tate; Emmett Taylor, Michael Taylor; Lamondre Tucker; James Tyler; Todd Wessinger; and Donald Wright file this Complaint pursuant to 42 U.S.C. § 1983 and Louisiana law involving the Louisiana Board of Pardons' unconstitutional cancellation of Plaintiffs' clemency hearings and/or willful violation of the Governor's directive to schedule clemency hearings.

## JURISDICTION AND VENUE

1.      This action is brought through 42 U.S.C. § 1983, pursuant to the Fourteenth Amendment to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343, and the aforementioned statutory and constitutional provisions.   In addition, Plaintiff invokes supplemental jurisdiction over claims under state constitutional and statutory law pursuant to 28 U.S.C. §1367.

2.      Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b) since this is the district where a substantial part of the events or omissions giving rise to the claim occurred.

2

## PARTIES

### Plaintiffs

3.      Plaintiffs are persons of the full age of majority, residents of Louisiana, and currently housed on Death Row at Louisiana State Penitentiary.

4.      Plaintiffs are all subject to the Pardon Board's unconstitutional cancellation of their clemency hearings and/or Defendants' willful violation of the Governor's directive to hold clemency hearings.

5.      Plaintiff ALLEN ROBERTSON an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

6.      Plaintiff ANTHONY BELL an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

7.      Plaintiff DANIEL BLANK an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

8.      Plaintiff SCOTT BOURQUE an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

9.      Plaintiff DAVID BOWIE an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

10.     Plaintiff QUINCY BROADEN an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

11.     Plaintiff HENRI BROADWAY an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

12.     Plaintiff DAVID BROWN an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

13.    Plaintiff GREGORY BROWN an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

14.    Plaintiff LADERRICK CAMPBELL an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

15.    Plaintiff JEFFREY CLARK an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

16.    Plaintiff SEDWRIC CLARK an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

17.    Plaintiff NATHANIEL CODE an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

18.    Plaintiff MICHAEL COOKS an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

19.    Plaintiff JAMES COPELAND an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

20.    Plaintiff FRANK COSEY an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

21.    Plaintiff KEVIN DAIGLE an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

22.    Plaintiff PERCY DAVIS an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

23.    Plaintiff CURTIS DEAL an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

24.    Plaintiff CLIFFORD DERUISE a n inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

25.    Plaintiff FELTON DORSEY an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

26.    Plaintiff DARRELL DRAUGHN an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

27.    Plaintiff JIMMY DUNCAN an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

28.    Plaintiff JAMES DUNN an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

29.    Plaintiff WINTHROP EATON an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

30.    Plaintiff CEDRIC EDWARDS an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

31.    Plaintiff ANTOINETTE FRANK an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

32.    Plaintiff MICHAEL GARCIA an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

33.    Plaintiff BOBBY HAMPTON an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

34.    Plaintiff CLARENCE HARRIS an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

35.    Plaintiff JESSIE HOFFMAN an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

36.    Plaintiff DACARIUS HOLLIDAY an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

37.    Plaintiff DANIEL IRISH an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

38.    Plaintiff KYLE JOEKEL an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

39.    Plaintiff GLYNN JUNIORS an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

40.    Plaintiff TRACY LEE an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

41.    Plaintiff DONALD LEGER an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

42.    Plaintiff JULIUS LUCKY an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

43.    Plaintiff JEREMIAH MANNING an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana

44.    Plaintiff JESSE MONTEJO an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

45.    Plaintiff LEE ROY ODENBAUGH an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

46.     Plaintiff MANUEL ORTIZ an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

47.     Plaintiff MARCUS REED an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

48.     Plaintiff JASON REEVES an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

49.     Plaintiff LARRY ROY an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

50.     Plaintiff CHRIS SEPULVADO an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

51.     Plaintiff WILLIE TART an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

52.     Plaintiff ANTOINE TATE an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

53.     Plaintiff EMMETT TAYLOR an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

54.     Plaintiff MICHAEL TAYLOR an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

55.     Plaintiff LAMONDRE TUCKER an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

56.     Plaintiff JAMES TYLER an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

57.    Plaintiff TODD WESSINGER an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

58.    Plaintiff DONALD WRIGHT an inmate currently incarcerated at Louisiana State Penitentiary, 17544 Tunica Trace, Angola, Louisiana.

**Defendants**

59.    Defendant LOUISIANA BOARD OF PARDONS ("Pardon Board") is a board of the State of Louisiana.  The Pardon Board is responsible for scheduling clemency hearings once directed by the Louisiana Governor.  The Pardon Board is directly liable for the acts complained herein under Section 1983 due to its policies and practices and its grossly negligent and/or intentional violation of the Governor's directives.  The Pardon Board is further liable under Louisiana law.

60.    Defendant SHERYL RANATZA, a Louisiana resident, is the chairperson of the Pardon Board with the responsibilities of calling meetings, establishing the agendas, and following the Governor's directives.

61.    Defendant CURTIS FREMIN, a Louisiana resident, is a member of the Pardon Board with the responsibilities of voting on agenda items and following the Governor's directives.

62.     Defendant ALVIN ROCHE', a Louisiana resident, is a member of the Pardon Board with the responsibilities of voting on agenda items and following the Governor's directives.

63.    Defendant ANTHONY MARABELLA, a Louisiana resident, is a member of the Pardon Board with the responsibilities of voting on agenda items and following the Governor's directives.

64.    Defendant BONNIE JACKSON, a Louisiana resident, is a member of the Pardon Board with the responsibilities of voting on agenda items and following the Governor's directives.

## Relief Requested

65.    Plaintiffs, death-sentenced Louisiana prisoners, file this 42 U.S.C. § 1983 Complaint, seeking declaratory and injunctive relief, seeking expedited relief to prevent Defendants from violating Plaintiffs' due process and equal protection rights by cancelling Plaintiffs' clemency hearings and/or willfully violating the Governor's directive to schedule clemency hearings.

66.    Plaintiffs move for an order enjoining Defendants from cancelling the clemency hearings and unconstitutionally converting them to "administrative review" without due process, notice, and an opportunity to be heard and in violation of the Governor's directive, and/or the Defendants willful and intentional violation of the Governor's directive to schedule clemency hearings. "Administrative reviews" are not clemency hearings. The Pardon Board does not consider whether to recommend an applicant for clemency at an administrative review; the Board only considers whether it will schedule the application for a clemency hearing. The conversion of Plaintiffs' clemency hearings to "administrative reviews" is therefore a *de facto* cancellation of Plaintiffs' clemency hearings.

67.    Defendants willfully and intentionally violated the Governor's directive.  Defendants were without authority or discretion to violate the Governor's directive to conduct clemency hearings for Plaintiffs.  Once the Governor directed the Defendants to conduct clemency hearings, Defendants only act was ministerial in nature.  Defendants violated their ministerial responsibility by willfully and intentionally canceling the hearings and replacing them with "administrative" review.  Such an unconstitutional extra-authority cancellation deprives the Governor of reviewing the Defendants' clemency recommendation, thereby depriving the Governor of his plenary authority to decide whether to issue clemency to any of the Plaintiffs.

68.     Plaintiffs also seek a declaration under Louisiana law that Defendant's Settlement Agreement is illegal and unenforceable for the following non-exclusive reasons:  (a) the Settlement Agreement violates Louisiana's Open Meetings Law; (b) neither the Governor nor Plaintiffs are parties to the Settlement Agreement; (c) neither the Governor nor Plaintiffs were provided notice before the Settlement Agreement was signed; (d) the Settlement Agreement has not been signed by all members of the Pardon Board; and/or (e) counsel for the Pardon Board illegally represented the Pardon Board and its individual members without (i) a public vote of the Board retaining counsel, (ii) without a written contract with the Board, and/or (iii) while hiding a conflict of interest without seeking a valid waiver from the Pardon Board.

I.      **BACKGROUND**

        a.      **Plaintiffs filing and Governor's lawful order**

69.     In June and July of 2023, fifty-six (56) Death Row inmates filed applications for clemency with the Pardon Board, each seeking a reduction of their sentence to life without the possibility of parole.

70.     On August 9, 2023, Governor John Bel Edwards directed the Louisiana Board of Pardons to schedule hearings for each of the 56 Clemency Applications that had been filed before it (the "Constitutional Directive"). As Governor Edwards stated in his letter to the Board,

> I am guided by my deep faith in taking my pro-life stance against the death penalty. Beyond moral justifications, there are a number of reasons, whether based in law or science that support the need for mercy while considering these applications. I believe we must consider further the imperfect nature of the criminal justice system and the actual innocence that has been proven far too often after imposition of the death penalty.[1]

---

[1] *See* East Baton Rouge Parish District Attorney Pet. ("EBRDA Pet.") at at ¶ 18, attached as Exhibit 1 and, Letter from the Governor to Sheryl M. Ranatza, Tony Marabella, Bonnie Jackson, Curtis "Pete" Fremin, Alvin Roche' Jr., Louisiana Board of Pardons (August 9, 2023), attached as Exhibit 2.

71.    The Governor's authority to direct the Board of Pardons to schedule hearings on the capital clemency applications is both constitutional and consistent with the Board's own policies.  Board Policy 02-207 states that "[n]otwithstanding any provision to the contrary by Board policy, in **any case in which the death sentence has been imposed**, the Governor may at any time place the case on the agenda and set a hearing for the next scheduled meeting or at a specially called meeting of the Board."[2]

72.    On August 10, 2023, the Board complied with the Governor's Constitutional Directive and began scheduling those hearings and issued notice to victims' families of the first twenty hearings (which the Pardon Board labeled as "Group 1," indicating its intention to set the remainder of applicants for hearing promptly thereafter).  Such notices acknowledged that the hearings were set "in response to the Governor's request."  The first twenty clemency hearings were scheduled for October 13th, 2023, November 8, 2023, November 13, 2023, and November 27, 2023.[3]

### b.    Attorney General collusion and overreach

73.    Attorney General Jeff Landry has asserted his influence over every aspect of the Board's review of these capital clemency applications. Soon after the Clemency Applications were first filed, in June 2023 the Attorney General announced his and his office's official opposition to the substance of those applications: "'I oppose clemency for all of these offenders who were given valid death sentences by juries of their peers,' [Attorney General Jeff] Landry said in a statement. 'My office will formally oppose their applications.'"[4] One month later, Attorney General Landry himself signed off on an Attorney General Opinion opining that the Board could not even **hear** the

---

[2] La. Bd. Of Pardons Board Policy 02-207-POL (Oct. 26, 2020) ("Board Policy 02-207"), attached as Exhibit 3.
[3] *See* Hearing Schedule, attached as Exhibit 4.
[4] *See* James Finn, *Jeff Landry says he'll fight Louisiana death row prisoners' clemency pleas*, NOLA.COM, June 13, 2023, attached as Exhibit 5.

Applications that he had already announced he would substantively oppose. *See* A.G. Op. 23-0083 (July 18, 2023).

74.     Thereafter, a representative from the Attorney General's office acted as counsel to the Board of Pardons. On July 24th, Assistant Attorney General Grant Willis appeared at a meeting of the Pardon Board as "Board of Pardons Attorney & Assistant Attorney General," and advised the Board in line with Attorney General Landry's opinion.[5] Shortly thereafter, the Board of Pardons' returned all capital clemency applications that it had previously agreed to hear.

75.     Approximately one week later, the Governor issued his Directive to the Board to place the Clemency Applications on its calendar for hearings. Attorney General Landry quickly made public statements that Governor Edwards' actions were an insult to jurors and only the "first step," into allowing capital offenders to walk free:

> In seeking to commute the death sentences of these 56 convicted murderers, John Bel Edwards is attempting to overturn the decisions of 672 Louisiana jurors and 1,344 individual juror votes. These jurors took time from their families and jobs to go through weeks of intensive and stressful litigation. They had the courage to stand up and vote in favor of the victims of these horrible crimes and render the appropriate death sentences. The criminals they convicted have murdered innocent people, including law enforcement officers. These cases involved intensive investigations by hundreds of law enforcement officers. Hundreds of family members and secondary victims suffered from those murders and were involved directly or indirectly with the trials. Numerous district judges presided over the lengthy and difficult trials – following the law in issuing the death sentences. The commutation to a life sentence is the first step in converting the sentences to a set period of time with eligibility for parole or release. So, as a lame duck governor with less than five months left on his term, John Bel Edwards seeks to insult the judgment of thousands of Louisiana citizens, law enforcement officers, judges, and crime victims.[6]

---

[5] *See* Minutes of the Pardon Board, August 14, 2023, attached as Exhibit 6.
[6] *See Gov. Edwards tells Pardon Board to consider clemency for death row inmates,* https://www.kalb.com/2023/08/09/gov-edwards-tells-pardon-board-consider-clemency-death-row-inmates/ (10/10/2023), attached as Exhibit 7.

76.     The following day the Board complied with the Governor's Directive and began scheduling clemency hearings for the capital applicants.

77.     Over a month after the Governor's Directive and the Board's scheduling of the first rounds of hearings, District Attorney Hillar Moore filed for a Preliminary Injunction with the Nineteenth Judicial District Court, followed shortly by similar requests filed by Attorney General Jeff Landry, and the District Attorneys for Jefferson, Caddo, Natchitoches, Rapides, and DeSoto Parishes.

78.     The Board of Pardons then sought independent counsel. The Board is typically represented by the Attorney General in legal proceedings. However, upon being made defendants in a civil suit filed by the Attorney General himself, the need for independent counsel was unquestionable, and the Board subsequently retained J. Arthur Smith, III as its independent attorney.

79.     Mr. Smith prepared legal pleadings, approved by the Board, in which he correctly argued that "the relief requested by the Plaintiffs in the instant case 'would amount to an unconstitutional exercise of the governor's exclusive pardon power in violation of the doctrine separation of powers as provided in La. Const. Art. II, § 2'" (citing *State v. Lee,* 2022-KK-01827, 2023, La. LEXIS 1649 (La. 09/08/23). Mr. Smith's pleadings prayed that "Plaintiffs Petition be dismissed with prejudice, at his cost."[7]

80.     Mr. Smith also prepared to file a *Motion to Recuse* Attorney General Jeff Landry, arguing that Mr. Landry had a conflict of interest in filing a civil action against the Board while also acting as the Board's attorney. Mr. Smith noted that "[i]t is certainly conceivable, plausible, and reasonable that the public would believe that the Attorney General's suit against the Parole Board and its members is motivated, at least in part, by his own political agenda… The numerous

---

[7] *See* Defendant's Exception of No Cause of Action and Lack of Subject Matter Jurisdiction and Memorandum in Support thereof, at 1, attached as Exhibit 8.

conflicts that arise from the Attorney General's suit against his own clients clearly show that the Attorney General has 'a personal interest' in the case."[8]

81.     Mr. Smith then notified the Attorney General of his intention to raise the conflict of interest. Attorney General Landry responded by dismissing Mr. Smith as the Board's attorney. Via letter, Attorney General Landry stated, "[y]our letter indicating that a conflict exists calls into question your competency as a lawyer."[9] The Attorney General further stated, "[y]ou are not authorized to serve as legal counsel. My office can appoint special counsel for the Board if needed or the Department of Public Safety and Corrections attorneys can handle the matter in house."[10]

82.     The following day Judge Donald Johnson of the Nineteenth Judicial District Court convened a status conference with the parties via zoom. Mr. Smith participated in the status conference and informed the Court that he had received a letter from Attorney General Landry and was therefore unsure of his status as counsel for the Board. Separately, attorneys from the firm Sher Garner Cahill Richter Klein & Hilbert, L.L.C ("Sher Garner") also appeared at the status hearing and stated that they had just been retained as attorneys for the Board.

83.     The Court stated its intention to proceed with the hearing on the preliminary injunction the next day, September 28th. The Court asked the President of the Louisiana District Attorneys Association to contact any District Attorneys who were not present at the status conference, to ensure that they would appear the next day.

84.     The following day District Attorneys from Desoto Parish and Caddo Parish did not appear in court. The Court stated its intention to move forward with the hearing, and to decide these critical issues. However, at the bench and off the record, the District Attorneys and Attorney

---

[8] *See Defendant's Motion to Recuse Attorney General and Memorandum in Support thereof*, at 3, attached as Exhibit 9.
[9] *See Letter from Attorney General Jeff Landry to J. Arthur Smith, III* (Sept. 26, 2023), at 1, attached as Exhibit 10.
[10] *Id.* at 2.

General successfully argued that the hearing should be continued because all District Attorneys were not present and had not been served with this Court's Order to show cause why the related cases should not be consolidated. Furthermore, the new attorneys for the Board of Pardons represented that they had only recently been retained and were not sufficiently familiar with the issues to proceed.

85.    Counsel for the capital clemency applicants notified the Court of his concerns that the Board's original counsel had been terminated by the Attorney General, and that potential conflicts of interest existed with the Attorney General's office and the Board's new counsel in this matter. . Although counsel was prepared to address that issue the same day, counsel for the Attorney General refused to waive formal service of any motions, and the Court was forced to delay the proceedings.

86.    All parties were ordered to appear on Tuesday, October 3rd for a hearing on the preliminary injunction.

87.    On September 28, just hours after court concluded, a notice was posted on the Pardon Board's website, scheduling a meeting of the Board for the following day (September 29th) to address the "pending litigations."[11]

88.    On September 29, at 4:00pm the Pardon Board held a public meeting. Present were the Board's attorneys from the firm of Sher Garner, and representatives of the East Baton Rouge District Attorney's Office and the Office of the Attorney General. Counsel for the capital clemency applicants learned of the meeting less than an hour before it occurred, and requested permission to appear via zoom.

---

[11] *See Notice and Agenda for September 29, 2023 Meeting*, attached as Exhibit 11.

89.     Only four members of the Board of Pardons were present. Board Member Bonnie Jackson did not attend. At the meeting, the Board went into executive session outside the presence of counsel for the capital clemency applicants. When they returned, one member of the Board moved for the Board to approve a settlement agreement (the "Settlement Agreement") to resolve all of the injunction cases brought by the Attorney General and District Attorneys. The four members of the Board who were present voted in favor of approving the Settlement Agreement.

90.     The details of this Settlement Agreement were not stated in the open meeting.  The public—including counsel for the clemency applicants who was present via zoom—was not provided an opportunity to provide comment prior to the Board's vote approving the Settlement.

91.     A partially executed copy of the Settlement Agreement[12] was subsequently disclosed, which included the following relevant provisions:

- That the previously scheduled capital clemency hearings would be canceled and transformed into "administrative reviews." At these reviews members of the Board would determine if the applicant would be granted a hearing.

- That the Board's schedule for administrative reviews must remain the same, and that any clemency hearings granted must be held at least 60 days later. As a result, only 5 capital clemency applicants could even potentially receive a clemency hearing while Governor John Bel Edwards was in office

- That the Board would refuse even an administrative review any other capital Clemency Applications that were pending before them.

---

[12] Settlement Agreement attached as Exhibit 12.

92.    Two days after the Board voted in favor of the Settlement Agreement, all District Attorneys and the Attorney General voluntarily dismissed their requests for a preliminary injunction, with prejudice.

93.    Upon information and belief, lawyers James Garner, Joshua Force, and their law firm Sher Garner, illegally represented Defendants.  No record of any vote by Defendants to hire James Garner, Joshua Force and their law firm can be found.  No resolution can be located.  No written contract between Defendants and James Garner, Joshua Force, and their law firm can be found.

94.    Even assuming some written attorney-client contract exists that predates the Settlement Agreement and was publicly voted on, James Garner, Joshua Force, and their law firm failed to obtain a written waiver from the Defendants of their conflicts of interest for concurrently representing the Attorney General in the State's opioids lawsuit, abortion lawsuit, and other lawsuits.[13]   Upon information and belief, none of this was disclosed to Defendants.

95.    Under the settlement agreement, these "administrative reviews" were set to begin on Friday, October 13, with review of five of the Plaintiffs' applications: Winthrop Eaton, Emmett Taylor, Clifford Deruise, Antoinette Frank, and Daniel Irish.

96.    On Tuesday, October 10, the Pardon Board published a notice of the agenda for the October 13 meeting. The agenda stated that

> *In addition to the written public comment that may be submitted before the meeting, during the meeting, public comment will be allowed before the Board considers each application. Ten (10) minutes will be allotted for persons speaking in favor of the application, and ten (10) minutes will be allotted for persons speaking against the application. Each speaker will be permitted to a maximum of two (2) minutes. Five (5) minutes will be allotted for the offender's legal representation and five (5) minutes will be allotted for District Attorneys.

Ex. ** (Board Agenda Oct 13).

---

[13] *See State v. Purdue Pharm L.P. et al.*, Case No. 661,638, Section 25; *State v. June Medical Services, LLC et al.*, Case No. C-720,988 Section 24.

97.     This process for conducting "administrative reviews" had never been seen before in any case, capital or non-capital. However, counsel for Plaintiffs prepared in good faith and presented their best cases on Friday October 13. Witnesses such as close family members, spiritual advisors, and former fellow inmates gave statements in support of the Plaintiffs up for review. These witnesses stressed that the applicants were not the same people they were at the time of their crimes and had dedicated their time in prison to repenting and improving their lives. Counsel presented the reasons why a hearing, and ultimately, relief, was appropriate, such as intellectual disability, serious mental illness, growth in prison, and evidence of innocence.

98.     Yet what counsel[14] for the Plaintiffs were met with was a sham proceeding, in which certain Board members had apparently pre-determined that no one would advance to a hearing on the merits.

99.     The Board was comprised of only four members, as Chairwoman Ranatza was absent. It was reported in the media that the Board considered a unanimous four votes as necessary to grant a hearing, although that was never communicated to the applicants.[15]

100.    District Attorneys and families of the victims gave passionate testimony about the facts of each offense and the impact of the offense on the victims' families. The family in at least one of the cases held up blown-up photos of the victim, a baby, after he died.

101.    Because of the prescribed order of proceedings—with all speakers for the Applicant required to present first, before all speakers for Opponents who went last—and Applicants' lack

---

[14] Plaintiffs were not permitted to speak on their own behalf or attend the "administrative reviews" in person or via Zoom.
[15] See Jillian Kramer and John Simmerman, *Antoinette Frank, notorious New Orleans cop, among five denied capital clemency hearings by state board*, The Advocate, October 14, 2023, at A1, available at https://www.nola.com/news/courts/antoinette-frank-notorious-new-orleans-cop-among-five-denied-capital-clemency-hearings-by-state-board/article_0ce69688-693a-11ee-8d26-9f69c1c501d7.html

of access to materials, the Applicants had no opportunity to rebut or respond to prejudicial and at times inaccurate assertions made by opponents to the Board.

102.    Although one of the five cases, Plaintiff Eaton's, involved no victim opposition, and in fact a speaker close to the victim told the board that the victim would not have wanted the death penalty, several district attorneys from the parish, *and other parishes* oppose a hearing and the Board denied a hearing by a 3-1 vote. Defendant Jackson stated that he was not in danger of execution, despite being condemned to death. Defendant Roche complained that Plaintiff Eaton had not filled out the form application, despite his being illiterate and seriously mentally ill.

103.    Defendants Roche and Fremin voted against hearing every one of the five cases up for consideration. Defendant Roche stated as his reasoning for several of the five, that recommending clemency would create an "interstate for this applicant to be released on parole,"[16] make the applicant "eligible for another time cut," or "one step away from walking out of the door."

104.    For one of the applicants, Defendant Roche stated that she needed more time without a writeup, although she had not had a writeup in six years. Defendants Jackson and Marabella pointed out that the normal standard (in non-capital cases) is 24 months without a writeup.

105.    Defendant Jackson spoke out against the unprecedented impossible standard her colleagues were applying to the decision to grant or deny a hearing, stating: "There are people we've given hearings to that have done as bad or worse."[17]

106.    At the close of the hearing, Louisiana District Attorney's Association Director Loren Lampert admitted that administrative reviews "were not designed to be about the merits of the

---

[16] *See* Richard Webster, *Louisiana pardon board denies clemency hearings to five on death row*, The Louisiana Illuminator, Oct. 14, 2023, *available at* https://lailluminator.com/2023/10/14/clemency-death-row/.
[17] Kramer, *supra*, n. 15.

cases," but that the proceeding that day was instead a "cathartic opportunity" for the families of the victims.[18]

## <u>COUNT ONE</u>

**42 U.S.C. § 1983 – Violation of Eight and Fourteenth Amendment Rights – All Defendants**

107.    All previous paragraphs are incorporated herein by reference as if set forth fully here. Defendants were grossly negligent, reckless, and deliberately indifferent in violating the Governor's directive to conduct clemency hearings for Plaintiffs.

108.    Defendants deliberately violated Louisiana law and the Pardon Board's own policies, practices, and procedures, knowing that it would result in the increased risk of execution of some or all of Plaintiffs.

109.    Defendants have policy making authority on the Pardon Board

110.    Defendants aforementioned conduct was intentional, deliberately indifferent, and inconsistent with the Pardon Board's policies, practices, and procedures.

111.    Defendants acted under pretense and color of state law in their individual and/or official capacities and within the scope of their respective employment.  Defendants' actions were beyond the scope of their jurisdiction, authority, and power, and were done willfully, knowingly, and with the specific intent to deprive Plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendment of the United States Constitution.

112.    The U.S. Constitution requires due process in state executive clemency proceedings, and § 1983 is the appropriate vehicle to seek this relief.  In *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 288 (1998), a case brought pursuant to § 1983, the Supreme Court ruled that the federal Constitution—namely, the "life" interest protected by the Due Process Clause—requires some "

---

[18] Kramer, supra n. 15.

minimal" degree of due process for death row inmates in state executive clemency proceedings. Although the Court did not specify the precise degree of due process required in state capital clemency, the Court said that "[j]udicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process." *Id*. at 289. Ultimately, the Court denied relief, ruling that Mr. Woodard's Ohio clemency proceedings did not violate the Due Process Clause, id. at 288, but the Court noted no procedural defect with bringing such challenges under § 1983.

113.    The Fifth Circuit has since reviewed similar challenges under § 1983. *See*, *e.g.*, *Garcia v. Jones,* 910 F.3d 188 (5th Cir. 2018) *** In *Young v. Gutierrez*, the court announced that the decision in *Skinner v. Switzer*, 562 U.S. 521 (2011), constituted an intervening change in the law as to the standard determining when a claim is cognizable under § 1983. 895 F.3d 829, 830 (5th Cir. 2018); *see Skinner*, 562 U.S. at 525 ("Where the prisoner's claim would not 'necessarily spell speedier release,' . . . suit may be brought under § 1983."). The Fifth Circuit in *Young* recognized that a challenge to clemency proceedings would not "spell speedier release," and, if successful, the proceedings would result only in the plaintiff being "afforded a clemency proceeding commensurate with the Constitution." *Id*. at 831. Thus, this § 1983 action is the appropriate vehicle for seeking enforcement of the Plaintiffs' federal due process and equal protection rights.

114.    Defendants violated Plaintiffs' federal Constitutional Rights to due process and equal protection during state clemency proceedings.  The United States Supreme Court has recognized that the importance of the clemency process in a capital case cannot be understated: "Far from regarding clemency as a matter of mercy alone, we have called it 'the "fail safe" in our criminal justice system.'" *Harbison v. Bell*, 556 U.S. 180, 192 (2009) (quoting *Herrera v. Collins*, 506 U.S.

390, 415 (1993)). Indeed, "[c]lemency is deeply rooted in our Anglo-American tradition of law, and it is the historic remedy for preventing miscarriages of justice where the judicial process has been exhausted. *Herrera*, 506 U.S. at 390; *see also Dretke v. Haley*, 541 U.S. 386, 399 (2004) (Kennedy, J., dissenting) ("Among its benign if too-often ignored objects, the clemency power can correct injustices that the ordinary criminal process seems unable or unwilling to consider."). Clemency power is "a prerogative granted to executive authorities to help ensure that justice is tempered by mercy." *Cavazos v. Smith*, 565 U.S. 1, 8-9 (2011). When the clemency process is so infected by the improper interference by the prosecution and/or reduced to that of a sham proceeding, as it was here, Louisiana's death penalty scheme is rendered constitutionally defective.

115.    The necessity for the "fail safe" afforded by the clemency process is evident in this case. In the short time since the Governor issued his Directive that the Pardon Board set the 56 Clemency Applications for hearing, the United States Fifth Circuit Court of Appeals affirmed the vacatur of the conviction and death sentence of Jarrell Neal, one of the 56 capital clemency applicants, after Mr. Neal spent nearly 25 years on Louisiana's death row.[19] Mr. Neal's conviction and death sentence were vacated because the jury never heard critical evidence indicating that Mr. Neal was not the shooter responsible for the underlying crime.[20]

116.    In *Woodard*, 523 U.S. at 288-89, Justice O'Connor, in a plurality opinion, reasoned that as long as the condemned person is alive, he has an interest in his life that the Due Process Clause protects. Justice O'Connor found that the specific procedural flaws Woodard cited did not rise to the level which would trigger a cognizable due process challenge, i.e., that he did not have enough days' notice of his interview after the setting of his warrant; and that he did not have enough time to prepare a clemency petition. *Id*. at 289-90. Each of these criticisms dealt with discrete aspects

---

[19] *See Neal v. Vannoy*, 78 F.4th 775 (5th Cir. 2023).
[20] *Id.* at 780, 791-96.

of the internal structuring of a clemency hearing and are minor in comparison to the complete and improper takeover of the clemency process presented in Plaintiffs' situation.

117.    Based on Plaintiffs' constitutionally protected life interests, they seek enforcement of their due process rights to minimally adequate safeguards under the Fourteenth Amendment in clemency proceedings, including the right to a meaningful opportunity to be heard. Plaintiffs' clemency proceeding arbitrarily lacked minimal due process because they were denied "access to [the] clemency process," *Woodard*, 523 U.S. at 289, due to the Attorney General and District Attorneys' interference. Since the Attorney General has manipulated the Plaintiffs' clemency proceedings to the point of rendering them all but meaningless, Plaintiffs request that this Court enter a preliminary and permanent injunction enjoining the Board from proceeding under the Settlement Agreement with the Attorney General and District Attorneys and instead applying the Board policies and rules, as well as the Governor's Constitutional Directives, consistent with the minimal guarantees of due process.

118.    Louisiana's clemency rules applicable to capital cases demonstrate a clear line of authority to the Governor.  The Governor's constitutional authority is plenary.  The Louisiana Constitution of 1974, Article IV, § 5(E)(1), provides as follows:

> The governor may grant reprieves to persons convicted of offenses against the state and, upon favorable recommendation of the Board of Pardons, may commute sentences, pardon those convicted of offenses against the state, and remit fines and forfeitures imposed for such offenses.

La. Const. Art. IV § 5(E)(1). The Governor's power to grant clemency is robust. As the Louisiana Supreme Court has explained, "Louisiana's gubernatorial clemency power, which encompasses reprieves, pardons, commutations of sentences and the restoration of full rights of citizenship, is bestowed by the constitution. It is purely a function of the executive branch of government, not subject to limitation or control from the other branches." *See State v. Jones*, 94-

0459 (La. 7/5/94), 639 So. 2d 1144, 1150-51 (citing *Bryant v. Louisiana State Pardon Board*, 378

So.2d 180 (La. Ap. 1st Cir. 1979), and *State v. Mehojovich*, 119 La. 791, 44 So. 481 (1907)); *State*

*v. Lee*, 22-KK- 1 827 (La. Sept. 8, 2023), --- So. 3d ---, 2023 WL 5813836, *2, *4 (citing La.

Const. art. IV(E)(1)).

119.    The Governor's far-reaching authority to grant clemency extends to capital cases. Indeed,

the Louisiana Constitution guarantees the legislature's ability to require courts to inform capital

jurors of the possibility that any decision regarding penalty may be commuted by the Governor.

*See* La. Const. Art. I, § 16. The legislature made the requirement mandatory. *See* La. C.Cr. P. Art.

905.2(B) ("the court *shall* instruct the jury that under the provisions of the state constitution, the

governor is empowered to grant a reprieve, pardon, or commutation of sentence following

conviction of a crime, and the governor may, in exercising such authority, commute or modify a

sentence of life imprisonment without benefit of parole to a lesser sentence including the

possibility of parole, and may commute a sentence of death to a lesser sentence of life

imprisonment without benefit of parole. The court *shall* also instruct the jury that under this

authority the governor may allow the release of an offender either by reducing a life imprisonment

or death sentence to the time already served by the offender or by granting the offender a pardon")

(emphasis added).

120.    Pursuant to LAC Title 22, Part V, Chapter 213, an application on behalf of a capital inmate

must contain the following information: (1) the name of the applicant, together with any pertinent

identifying information; (2) identification of the applicant's agents, if any, who are presenting the

application; (3) certified copies of the indictment, judgment, verdict of the jury, and sentence in

the case, including official documentation verifying the scheduled execution date; (4) a brief

statement of the offense for which the prisoner has been sentenced to death; (5) a brief statement

of the appellate history of the case, including its current status; (6) a brief statement of the legal issues which have been raised during the judicial progress of the case; (7) the requested length of duration of the stay, which shall be in increments of 30 days, unless a different duration is requested on the basis of the grounds for the application set forth pursuant to §213.A.8; (8) all grounds upon which the basis of which the stay is requested, provided that such grounds shall not call upon the board to decide technical questions of law which are properly presented via the judicial process; and (9) a brief statement of the effect of the offender's crime upon the family of the victim. *See* LAC 22.V:213(A). The written application must be delivered to the Pardon Board's Office. *See* LAC 22.V:213(B).

121.    Once the Board has received an application from a condemned person, the Louisiana Administrative Code provides that "a majority of the board,[21] in written and signed form" may do one of three things: (1) recommend to the governor a reprieve from execution "(which may include a recommendation to commute the sentence to life imprisonment)"; (2) not recommend a reprieve from execution; or (3) set the matter for a hearing as soon as practicable and at a location convenient to the board and the parties to appear before it. *See* LAC 22.V:213(G). As this provision demonstrates, the Pardon Board can make a favorable recommendation to the Governor in a capital case based on the written application and any supplemental materials submitted, which means that the Governor can commute the Death Row inmates' sentences to life imprisonment without the necessity of holding a hearing in each case. Should the Board or the Governor desire a hearing, the Pardon Board Policies with respect to capital cases provide the Governor with unique control over the timing of its meetings or hearings:

---

[21] All provisions of the LAC are subject to waiver by the Board in capital cases, and the Board Policy provides that a decision to commute a death sentence to life imprisonment only requires "a majority of the Board, or a majority thereof." 02-207-POL.

> Notwithstanding any provision to the contrary by Board policy, in any case in which the death sentence has been imposed, the Governor may at any time place the case on the agenda and set a hearing for the next scheduled meeting or at a specially called meeting of the Board.

Pardon Board Policy No. 02-207-POL. This provision allows the Governor to put the applications submitted by Death Row inmates before the Board at the same time and in an accelerated time frame. By its express terms, this provision it is not limited to cases with an execution warrant, but includes "any case in which the death sentence has been imposed." *Id.*

122.    The Governor's ability to place cases on the docket is inherent in the executive Pardon Power, and was invoked as a matter of practice before it was expressly recognized in the Board's policies.  In 2003, before implementation of Pardon Board Policy 2-207, Governor Mike Foster directed the Pardon Board to set a clemency hearing for Herbert Welcome, who had been sentenced to death.[22] The Board complied with Governor Foster's directive without first conducting an "administrative review."

123.    The Louisiana Administrative Code provides an extra measure of flexibility in capital cases in which clemency is being considered. Pursuant to LAC 22.V: 213(M), which is also reflected in the Board Policy 02-207-POL, all of the requirements related to clemency applications in capital cases can be waived by the Board in order to accommodate exigencies:

> Each of the provisions of this policy are subject to waiver by the board when it finds that there exists good and adequate cause to suspend such provisions and adopt a different procedure which it finds to be better suited to the exigencies of the individual case before it.

LAC 22.V: 213(M). For instance, the Pardon Board Policy regarding the number of members of the Board who must agree regarding clemency in a capital case states that a majority of the Board, "or a majority thereof," shall decide capital applications, indicating that the number of favorable

---

[22] *See* Kerry Myers, *A Hint of Understanding*, THE ANGOLITE, May/June 2003, at 27, attached as Exhibit 13.

votes is determined by the number of board members present. Pardon Board Policy 02-207-POL. This is also consistent with Pardon Board Directives which state that, in a capital case, "[i]f a Board Member is on leave and out of the country, the Member shall not be required to vote." Pardon Board Dir. 02-208-DIR.

124.    One significant difference between capital cases and non-capital cases is that, in non-capital cases, a hearing is a prerequisite for commutation of sentence.[23] LAC 22.V:203(A)(2). In capital cases, as discussed above, the Board may recommend commutation of sentence even without a hearing. *See* LAC 22.V:213(G). In general, however, the Administrative Code sets forth the parameters of hearings before the Pardon Board.[24] The Board may deny a hearing for several enumerated reasons, within its discretion. LAC 22.V:105(A). Where a hearing has not been denied, and the applicant otherwise qualifies for clemency, the Administrative Code provides that, after receipt of all of the required information and documents and clemency investigation, "the board shall set the matter for public hearing." LAC 22.V:211(B). Once a hearing has been granted, the applicant must publish a notice in the newspaper, and may provide any additional information on his or her own behalf. LAC 22.V:209. The Board must notify the trial officials of the parish of conviction, the Attorney General, and the family of the victim, and allow any such individuals, or the designated representatives thereof, the opportunity to attend the hearing and/or to present any relevant information. LAC 22.V:213(H)-(I).

125.    At the hearing itself, up to three witnesses in favor and three against the application may speak, which is limited to 15 minutes of presentation by the parties and 5 minutes of statements

---

[23] "A person may not be considered for a commutation of sentence unless he or she has been granted a hearing by the pardon board and has had his or her case placed upon a pardon board agenda." LAC 22.V:203(A)(2).

[24] The Pardon Board's capital Directive provides that Board Policy 02-207 governs capital clemency applications "for which a hearing is granted." Board Directive 02-208-DIR. Board Policy 207 is a duplicate of LAC 22.V:213.

by the victim's family. LAC 22:V.213(O). There is no limit to written correspondence from either side. All hearings must be in open session pursuant to requirements of the Louisiana Open Meetings Act. LAC 22:V.213(J). At the conclusion of the hearing, "the board shall render its decision, reached by majority vote, within a reasonable time." LAC 22:V.213(L).

126.    No provision in the Administrative Code, Revised Statutes, or the Board's Policies and Directives, allows the Board to revoke a granted hearing.

127.    Nor is there any provision for public "administrative reviews" in the Administrative Code, Revised Statutes, or the Board's Policies and Directives. The unwritten Board practice is to review applications received monthly for compliance with procedural rules, and set hearings unless the applicant does not meet the procedural requirements. See Ex. ** (Letter from Francis Abbott to Hillar Moore).

128.    The "administrative review" that the Board held on October 13 was an unprecedented sham. The attorneys for the applicants were not permitted to respond to the opposition, allowing false or misleading statements to stand uncorrected. There was also an egregious vacuum where the applicant was not allow to attend, be heard to speak on his or her own behalf, answer questions of the board, or express remorse to the victims' families. Some victims' family members decried the lack of remorse shown to them, while the applicant was not allowed to be present and show remorse, and was arguably prohibited from even sending a letter of remorse to the family members.[25]

129.    It was apparent that two of the Board members had predetermined to vote against granting a hearing to any of the applicants regardless of the facts of their individual case. Defendant Roche in particular stated several times that a vote to grant a hearing would lead to the applicant being

_____

[25] *See* La. R.S. § 46:1846.

released, and that was why he was voting against a hearing. This blanket position meant that he would vote against a hearing in any capital case, and that no one, not a single applicant, would get a hearing on the merits.

130.   This is not a flip of a coin – there is no coin. This was a sham proceeding pre-determined to prevent the Plaintiffs' valid claims and pleas for mercy from ever seeing the light of day.

131.   When the state does not comport with its own rules, the state may be in violation of the federal constution's Due Process Clause. *Woodard*, 523 U.S. at 289 (O'Connor, J., concurring). More specifically, that the clemency process in *Woodard* comported with Ohio's regulations was a primary reason that Justice O'Connor found no due process violation in that case. *Id*. at 290 (O'Connor, J., concurring). Additionally, Justice O'Connor highlighted the type of process the petition received—namely "notice of the hearing and an opportunity to participate in an interview"—in determining that there was no due process violation. *Id*. In other words, Justice O'Connor's language strongly suggests that, had Ohio's clemency process not provided notice or an opportunity to be heard, in the petitioner's case through an interview, Ohio's process would not have satisfied the minimal due process requirement. The minimal due process required of clemency thus demands at least sufficient notice and an opportunity to be heard during the clemency process. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotations omitted)); *see also Fuentes v. Shevin*, 407 U.S. 67, 80 (1972). The Board's violation of its own rules to cancel scheduled hearings and preclude any additional hearings from being scheduled violated Plaintiffs' rights to due process.

132.   A meaningful opportunity to be heard also requires an impartial decisionmaker. *See Wolff v. McDonnell*, 418 U.S. 539, 559 (1974) (holding that in a parole revocation hearing, minimal due

process imposed certain minimal procedural requirements that included a "neutral and detached hearing body . . . ." (internal quotations omitted)); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (holding that citizen enemy combatants are afforded some due process, which includes "a neutral decisionmaker"). Where the decisionmaker's process has been hijacked by members of the prosecution, specifically the Louisiana Attorney General, who not only served as the Board's counsel but also sued the board, fired the Board's independent counsel, and supplanted independent counsel with hand-picked counsel who shepherded the Board into an unlawful Settlement Agreement, the applicants have no meaningful opportunity to be heard or fair consideration of their applications before an impartial decisionmaker.

133.    These new, unwritten procedural hurdles would be applied for the first time, retroactively, to Plaintiffs, in violation of their rights to equal protection. In the history of the death penalty in Louisiana, the Pardon Board has rarely recommended clemency for a capital applicant, but (1) has followed its own rules when considering capital clemency applications; (2) has either held a hearing before deciding the merits of the application, or (3) denied the application on the merits without a hearing. Never has the board granted a hearing, either on its own accord or at the lawful directive of the governor, and then rescinded the hearing. These new procedural hurdles, unwritten rules, and rescissions of hearings, intentionally violate the Governor's directive, serve as substantive infringement of Plaintiffs due process rights.

134.    Defendants' aforementioned misconduct also violates the separation of powers doctrine by violating the governor's directive.

135.    Defendants' aforementioned misconduct constitutes an arbitrary unconstitutional infringement on Plaintiffs right for a fair hearing.

## COUNT TWO
## STATE CONSTITUTIONAL CLAIMS

136.    All previous paragraphs are incorporated herein by reference as if set forth fully here.

137.    Defendants violated the state constitutional due process and equal protection clauses for all of the aforementioned reasons.

138.    The Court is allowed to exercise supplement jurisdiction over this claim.

## COUNT THREE
## STATE LAW CLAIM DECLARATORY JUDGMENT THAT DEFENDANT'S SETTLEMENT AGREEMENT IS VOID AND UNENFORCEABLE TO PLAINTIFFS

139.    All previous paragraphs are incorporated as if stated herein.

140.    The Court can exercise supplemental jurisdiction over this claim.

141.    Plaintiffs seek a declaration under Louisiana law that Defendant's Settlement Agreement is void and unenforceable for the following non-exclusive reasons:  (a) the Settlement Agreement violates Louisiana's Open Meetings Law; (b) neither the Governor nor Plaintiffs are parties to the Settlement Agreement; (c) neither the Governor nor Plaintiffs were provided notice before the Settlement Agreement was signed; (d) the Settlement Agreement has not been signed by a quorum of the Pardon Board; and/or (e) counsel for the Pardon Board illegally represented the Pardon Board and its individual members by violating, inter alia, La. R.S. 42:263(A) without (i) a public vote of the Board retaining counsel, (ii) without a written contract with the Board, and/or (iii) while hiding a conflict of interest without seeking a valid waiver from the Pardon Board.

142.    Defendants deliberately violated the Governor's directive in violation of the state constitution. Throughout the capital clemency process, Attorney General Jeff Landry and several District Attorneys have asserted unprecedented influence. Soon after the Clemency Applications were first filed, in June 2023 the Attorney General announced his and his office's official opposition to the substance of those applications: "'I oppose clemency for all of these offenders

who were given valid death sentences by juries of their peers,' [Attorney General Jeff] Landry said in a statement. 'My office will formally oppose their applications.'"[26] Nevertheless, one month later, when approached by the Board seeking a non-advocacy-oriented Attorney General Opinion on a procedural question eligibility of the capital clemency applicants, Attorney General Landry himself signed off on an Attorney General Opinion opining that the Board could not even *hear* the Applications that he had already announced he would substantively oppose. *See* A.G. Op. 23-0083 (July 18, 2023)[27].

143.    When pressed on whether it posed a conflict for the Attorney General to release an official Opinion finding that all of the capital clemency applicants were ineligible for consideration, after publicly stating his opposition to all of the applications, Attorney General Landry responded that the "civil division" had drafted that opinion.[28] Significantly, the "civil division" of the Attorney General's Office is overseen by Chief Deputy Attorney General John Sinquefield, who personally prosecuted some of the 56 capital clemency applicants and had earlier stated to the media his hopes that the Board "would not even consider" the applications.[29] In any event, the Attorney General himself signed the opinion, and adopted it.

144.    Thereafter, an employee of the Attorney General's office acted as counsel to the Board of Pardons.  On July 24th, Assistant Attorney General Grant Willis appeared at a meeting of the Pardon Board as "Board of Pardons Attorney & Assistant Attorney General," and advised the Board in line with Attorney General Landry's opinion.[30] Shortly thereafter, the Pardon Board "returned" all capital clemency applications for which it had previously set hearings, following the

---

[26] *See* James Finn, *Jeff Landry says he'll fight Louisiana death row prisoners' clemency pleas*, THE TIMES PICAYUNE, June 13, 2023.
[27] Attached as Exhibit 14.
[28] James Finn, *Prosecutors ramp up attack on Louisiana death row clemency requests, saying process rushed*, THE TIMES PICAYUNE, July 25, 2023, attached as Exhibit 15.
[29] Finn, *supra* n. 4.
[30] *See Minutes of the Pardon Board* (August 14, 2023), attached as Exhibit 6.

reasoning proffered by the Attorney General. The Attorney General released a statement to the media "praising the Pardon Board and calling its decision 'a great victory for the victims of many of Louisiana's most heinous crimes.'"[31]

145.    Approximately one week later, the Governor issued his Directive to the Board to place the 56 Clemency Applications on its calendar for hearings, and the following day the Board complied with that Directive. The Board granted an initial round of hearings on the clemency applications of twenty of the fifty-six applicants. The required notices went out, noting that the hearings were set at the Governor's direction. Newspaper advertisements were made by the applicants. Probation and Parole conducted their investigation, including interviews of the applicants themselves.

146.    Over a month after the Governor's Directive and the Board's docketing of the first rounds of hearings, District Attorney Hillar Moore filed for a Preliminary Injunction with the Nineteenth Judicial District Court, followed shortly by similar requests filed by Attorney General Jeff Landry, and the District Attorneys for Jefferson, Caddo, Natchitoches, Rapides, and DeSoto Parishes.[32]

147.    The Pardon Board then sought independent counsel. The Board is typically represented by the Attorney General in legal proceedings. However, upon being made defendants in a civil suit filed by the Attorney General himself, the need for independent counsel was unquestionable, and the Board subsequently retained J. Arthur Smith, III as its independent attorney.

148.    Mr. Smith prepared legal pleadings, approved by the Board, in which he correctly argued that "the relief requested by the Plaintiffs in the instant case 'would amount to an unconstitutional exercise of the governor's exclusive pardon power in violation of the doctrine separation of powers

---

[31] John Simerman, *Pardon board turns away Louisiana death row clemency petitions en masse*, THE ADVOCATE, July 27, 2023, attached as Exhibit 16.
[32] Notably, only 6 of the 42 districts were represented in this lawsuit. Several of the docketed applications were prosecuted by District Attorneys who did not join in as plaintiffs, for example, the District Attorneys for Ouachita and Orleans Parishes.

as provided in La. Const. Art. II, § 2'" (citing *State v. Lee,* 2022-KK-01827, 2023, La. LEXIS 1649 (La. 09/08/23). Mr. Smith's pleadings prayed that "Plaintiffs Petition be dismissed with prejudice, at his cost."[33]

149.    Mr. Smith also prepared to file a *Motion to Recuse* Attorney General Jeff Landry, arguing that Mr. Landry had a conflict of interest in filing a civil action against the Board while also acting as the Board's attorney. Mr. Smith noted that "[i]t is certainly conceivable, plausible, and reasonable that the public would believe that the Attorney General's suit against the Parole Board and its members is motivated, at least in part, by his own political agenda… The numerous conflicts that arise from the Attorney General's suit against his own clients clearly show that the Attorney General has 'a personal interest' in the case."[34]

150.    Mr. Smith then notified the Attorney General of his intention to raise the conflict of interest.[35] Attorney General Landry responded by dismissing Mr. Smith as the Board's attorney. Via letter, Attorney General Landry stated, "[y]our letter indicating that a conflict exists calls into question your competency as a lawyer."[36] The Attorney General further stated, "[y]ou are not authorized to serve as legal counsel. My office can appoint special counsel for the Board if needed or the Department of Public Safety and Corrections attorneys can handle the matter in house."[37]

151.    The following day, Chief Judge Donald Johnson of the Nineteenth Judicial District Court convened a status conference with the parties via zoom. Mr. Smith participated in the status conference and informed the Court that he had received a letter from Attorney General Landry and

---

[33] *See Defendant's Exception of No Cause of Action and Lack of Subject Matter Jurisdiction and Memorandum in Support thereof*, at 1, attached as Exhibit 8.

[34] *See Defendant's Motion to Recuse Attorney General and Memorandum in Support thereof*, at 3, attached as Exhibit 9.

[35] *See Letter from J. Arthur Smith, III to Attorney General Jeff Landy* (Sept. 26, 2023), attached as Exhibit 17.

[36] *See Letter from Attorney General Jeff Landy to J. Arthur Smith, III* (Sept. 26, 2023), at 1, attached as Exhibit 10.

[37] *Id.* at 2.

was therefore unsure of his status as counsel for the Board. Separately, attorneys from the firm Sher Garner also appeared at the status hearing and stated that they had just been retained as attorneys for the Board.   Sher Garner also represented Landry in the state's Opioid litigation, abortion litigation, and has earned substantial income working on Landry approved contracts and donated a substantial amount to Landry's reelection and gubernatorial campaigns.

152.    The Court stated its intention to proceed with the hearing on the preliminary injunction the next day, September 28. The Court asked the President of the Louisiana District Attorneys Association to contact any District Attorneys who were not present at the status conference, to ensure that they would appear the next day.

153.    The following day, District Attorneys from Desoto Parish and Caddo Parish did not appear in court. The Court stated its intention to move forward with the hearing, and to decide these critical issues. However, at the bench and off the record, the District Attorneys and Attorney General successfully argued that the hearing should be continued because all District Attorneys were not present and had not been served with this Court's Order to show cause why the related cases should not be consolidated. Furthermore, the new attorneys for the Pardon Board represented that they had only recently been retained and were not sufficiently familiar with the issues to proceed.

154.    Counsel for the capital clemency applicants notified the Court of his concerns that the Board's original counsel had been terminated by the Attorney General, and that potential conflicts of interest existed with the Attorney General's office and the Board's new counsel in this matter. Although counsel was prepared to address that issue the same day, counsel for the Attorney General refused to waive formal service of any motions, and, and, over the Clemency Applicants' objections, the Court was forced to delay the proceedings.

155.    Just hours after court concluded, a notice was allegedly posted on the Louisiana Board of Pardon's website, scheduling a special meeting of the Board for the following day (September 29) to address the "pending litigations."[38] The capital clemency applicants who were intervenor parties to those litigations were not listed in the notice.

156.    The next day, at 4:00pm on September 29th, the Board of Pardons held a public meeting. Present were the Board's attorneys from the firm of Sher Garner, and representatives of the East Baton Rouge District Attorney's Office and the Office of the Attorney General. Counsel for the capital clemency applicants learned of the meeting less than an hour before it occurred, and requested permission to appear via zoom.

157.    Only four members of the Pardon Board were present. Board Member Bonnie Jackson did not attend. At the meeting, the Board went into executive session outside the presence of counsel for the capital clemency applicants. When they returned, one member of the Board moved for the Board to approve the Settlement Agreement to resolve all cases pending before this Court. All four present members of the Board voted in favor of approving the Settlement Agreement, and only after doing so did the Board Chair ask for public comment.

158.    The details of the Settlement Agreement were not stated in the open meeting[39].

159.    A partially executed version[40] of the Settlement Agreement was subsequently disclosed, which included the following relevant provisions:

- That the previously granted, docketed and scheduled capital clemency hearings would be canceled and transformed into "administrative reviews." At these

---

[38] *See Notice and Agenda for September 29, 2023 Meeting,* attached as Exhibit 11.
[39] *See* Transcript of September 29, 2023 Pardon Board Meeting, attached as Exhibit 18.
[40] Undersigned counsel have not found a fully executed copy of the agreement, signed by all parties, despite numerous requests.

reviews members of the Board would determine if the applicant would be granted a hearing.

- That the Board's schedule for administrative reviews must remain the same, and that any clemency hearings granted must be held at least 60 days later. As a result, only 5 capital clemency applicants could even potentially receive a clemency hearing while Governor John Bel Edwards was in office.

- That (inconsistent with their usual procedures of ordinarily reviewing all applications filed before the 16th of the month in the following month) the Board would refuse even administrative reviews any other capital clemency applications that were pending before them before the end of the year.

160. Two days after the Board voted in favor of the Settlement Agreement, and before the court hearing on the injunction that had been continued at their behest, all District Attorneys and the Attorney General voluntarily dismissed their requests for a preliminary injunction, with prejudice.

161. Under the Settlement Agreement forged between the Attorney General, District Attorneys, and the Pardon Board, the twenty previously granted, docketed and scheduled clemency hearings have been revoked without cause. The Settlement Agreement unlawfully prohibits the Board from scheduling hearings for any of the other 36 applicants who were granted hearings pursuant to the Governor's Directive.

162. The Settlement Agreement purports to impose unfair new restrictions and procedural hoops for capital clemency applicants to jump through in order to obtain a hearing on the merits—which are found nowhere in the Board's governing rules and would be applied retroactively to clemency applicants who filed nearly four months ago. Collectively, the Attorney General's and District Attorneys' actions throughout the proceedings have been calculated to thwart fair consideration of

the clemency applications, either by blocking them completely, or at the very least, delaying their consideration until after the gubernatorial election that Attorney General Landry hopes to win, and is expected to win, and thereby guaranteeing his ability to effect the outcome he desires. This deliberate manipulation of the process to prevent consideration by the current Governor violates the applicants' meaningful access to clemency procedures and fair consideration of applications, in violation of basic fairness and equal protection.

163.    The Pardon Board's deliberate and willful actions violate the clemency process, it's own rules, and plaintiff's rights.  At the behest of the Attorney General and District Attorneys, in violation of its own rules, and of the Governor's lawful directive, the Board agreed to rescind the nineteen previously granted hearings, without any legitimate basis for doing so. Exhibit 12 at 2. None of the applicants had been released from custody. *See* LAC 22.V:211(H). None of the applicants had failed to attend his or her own hearing. *See* LAC 22.V:211(I).

164.    The Settlement Agreement prohibits the Board from scheduling any additional hearings or "administrative reviews" before December 31, 2023. Exhibit 12 at 2. This restriction is found nowhere in the law, rules, polices, or directives. Plaintiffs had no notice of this restriction prior to filing their applications, and found out only pursuant to a public records request for the Settlement Agreement. Plaintiffs had no opportunity to voice opposition to this new restriction. This restriction prohibits timely review of any of the 36 pending capital clemency applications, and any others that may have otherwise been filed.

165.    The Settlement Agreement also purports to convert the scheduled hearings into "administrative reviews" of the applications to "determine whether or not to approve the applications for clemency hearings." Exhibit 12 at 2. No provision for such administrative review exists in the Board's rules for capital clemency applications. Upon information and belief, the

Board plans to hold essentially full hearings on the applications at these "administrative reviews," allowing written and oral statements for and against the applicant, but not allowing for the applicant himself to attend, give a statement, or be interviewed by the board. Such a proceeding has never been held before in any case, capital or otherwise. Plaintiffs are entitled to minimum due process guarantees in clemency proceedings which include the opportunity for a fair hearing and decision makers who do not act on their applications in an arbitrary and capricious manner and whose actions are not tainted by the prosecution.

166.    The Settlement Agreement violated Louisiana Open Meetings Law because the Board failed to inform the public that it would cancel the clemency hearings, failed to notify the Governor, and failed to notify Plaintiffs; and because the Defendants failed to invite public comment prior to voting to take these actions.

167.    Upon information and belief, the Settlement Agreement has not been signed by a quorum of the Board.

168.    Upon information and belief, the Board's counsel illegally represented the Board and any and all advice or reliance on counsel by the Board is illegal and must be voided, including the advice and direction by counsel to sign the Settlement Agreement.

## **CONCLUSION**

Defendants' deliberate actions to manipulate the process to adversely influence the decision maker and decision-making process have rendered the Louisiana executive clemency process a sham. Consequently, the Board is violating its own rules and abridging Plaintiffs' right to meaningful opportunity to be heard, and for fair consideration of their clemency applications, thereby denying Plaintiffs the due process required in clemency proceedings. *See Woodard*, 523 U.S. at 289–90 (O'Connor, J., concurring). The Board's application of new, severe restrictions on

capital clemency applications pursuant to its deal with the Attorney General and the District Attorneys also violates both due process and equal protection. Plaintiffs pray that this Court grant the relief requested in the accompanying Complaint, including prospectively enjoining the Board from applying the new restrictions contained in the Settlement to Plaintiffs' cases.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that, after due proceedings, judgment be entered in favor of Plaintiffs and against all Defendants in their official and individual capacities, jointly and in solido, and that this Court:

1.    Enjoin Defendants from violating the Governor's directive to conduct clemency hearings for Plaintiffs;

2.    Enjoin Defendants from converting the currently noticed clemency hearings into administrative reviews;

3.    Enjoin Defendants from failing to schedule clemency hearings for Plaintiffs whose clemency hearings have not been scheduled;

4.    Order defendants to conduct all of Plaintiffs' clemency hearings before midnight on **December 28, 2023**.

5.    Order defendants to conduct clemency hearings pursuant to its own policies.

6.    Award Declaratory Relief that Board Policy 02-207 and Directive 02-208 apply to the clemency proceedings in Plaintiffs' cases;

7.    Award Declaratory Relief that the Settlement Agreement is void and unenforceable.

8.    Award Plaintiffs reasonable attorneys' fees, expert fees, and court costs under 42 U.S.C. § 1988 for the prosecution of 42 U.S.C. § 1983 claims;

9.      Maintain jurisdiction and oversight until all clemency hearings have been concluded and Defendants have issued their recommendations to the Governor;

10.     Award Plaintiffs reasonable attorneys fees' and court costs under state law for the prosecution of his state law claims; and

11.     Award Plaintiffs such other and further relief as this Court deems just and proper.

12.     Pursuant to Louisiana law, only the Governor can grant clemency to any inmate, upon a recommendation of the Board.  Governor Edwards leaves office on January 8, 2024.  The Pardon Board has willfully violated the Governor's directive and Plaintiffs' constitutional rights.  This Court must enjoin Defendants from the continued violation of their right to fair clemency hearings because State processes will not enable us to obtain the relief in time.  Our clients have a due process right to clemency hearings because they are guaranteed by the Louisiana state constitution once Governor Edwards directed they occur.  Plaintiffs have exhausted all relevant procedures.

**Filed: October 17, 2023.**

**RESPECTFULLY SUBMITTED:**

/s/ Soren Gisleson
SOREN E. GISLESON
La Bar No. 26302 (T.A.)
HERMAN, HERMAN & KATZ
909 Poydras, Ste. 1860
New Orleans, Louisiana 70112-4060
Tel: (504) 581-4892; Fax: (504) 561-6024
sgisleson@hhklawfirm.com

*Attorney for Todd Wessinger*

/s/ D. Aaron Novod
D. Aaron Novod 31275
Law Office of D. Aaron Novod
P.O. Box 740985
New Orleans, LA 70174
(504) 913-3746
aaron.novod.esq@gmail.com

*Attorney for Christopher Sepulvado,*
*Anthony Bell ; Daniel Irish, Jason Reeves ;*
*Allen Robertson; and Manuel Ortiz*

/s/Nicholas Trenticosta
Nicholas Trenticosta LSBA No. 18475
7100 St. Charles Ave.
New Orleans, LA 70118
(504) 352-8019
nicktr@bellsouth.net

**Attorney for James Copeland and Winthrop Eaton**

/s/ Cecelia Kappel
Cecelia Trenticosta Kappel, La. Bar No. 42736
1024 Elysian Fields Ave.
New Orleans, LA 70117
(504) 529-5955
ctkappel@defendla.org

**Attorney for David Bowie; Gregory Brown; Jeffrey Clark; Nathaniel Code; Kevin Daigle; Darrell Draughn; Cedric Edwards; Jessie Hoffman; Kyle Joekel; Jeremiah Manning; Lee Roy Odenbaugh; Larry Roy; Donald Wright**

/s/ John Neeleman
John Neeleman
KILPATRICK TOWNSEND
1420 Fifth Avenue, Suite 3700
Seattle, WA 98111-9402
Direct: 206.626.7713; Mobile: 206.349.5763
**To be Admitted PHV**

**Attorney for Quincy Broaden**

/s/Sarah Ottinger
Sarah Ottinger La. Bar No. 24589
Attorney at Law
2563 Bayou Road, 2nd Floor
New Orleans, LA 70119
(504) 258-6537

**Attorney for Henri Broadway & Jessie Hoffman**

/s/ Matilde Cabria
Matilde Jean Carbia, LA Bar Roll No. 32834
Mwalimu Center for Justice
1340 Poydras St., Suite 1700
New Orleans, LA 70112
Tel: 504-212-2110; Fax: 504-212-4540
mcarbia@mcfj.org

**Attorney for Scott Bourque; Quincy Broaden; David Brown; Laderrick Campbell; Sedwric Clark; Michael Cooks; Frank Cosey; Percy Davis; Curtis Deal; Clifford Deruise; Felton Dorsey; Jimmy Duncan; James Dunn; Michael Garcia; Clarence Harris; Dacarius Holliday; Glynn Juniors; Tracy Lee; Donald Leger; Julius Lucky; Jesse Montejo; Marcus Reed; Chris Sepulvado; Willie Tart; Antoine Tate; Emmett Taylor; Michael Taylor; Lamondre Tucker**

/s/ Shawn Nolan
Shawn Nolan, PA Bar No. 56353
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520
Shawn_Nolan@fd.org
**To be Admitted PHV**

**Attorney for James Tyler**

/s/ Letty S. Di Giulio
Letty S. Di Giulio, LSBA No. 29836
LAW OFFICE OF LETTY S. DI GIULIO
8630 Oak Street
New Orleans, Louisiana 70118
Phone: (504) 571-5929
Fax: (504) 571-5437
letty@lettydigiulio.com

**Attorney for Daniel Blank, Antoinette Frank and Bobby Hampton**