## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ALLEN ROBERTSON, et al** | ) | **CASE NO. 23-1494** |
| | ) | |
| *Plaintiffs* | ) | **JUDGE SHELLY DICK** |
| | ) | |
| **VERSUS** | ) | |
| | ) | |
| **LOUISIANA BOARD OF** | ) | **MAGISTRATE JUDGE** |
| **PARDONS, et al** | ) | **RICHARD BOURGEOIS** |
| | ) | |
| *Defendants* | ) | |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION TO ENJOIN
THE PARDON BOARD FROM VIOLATING THE CIVIL RIGHTS
OF DEATH ROW INMATES**

**MAY IT PLEASE THE COURT:**

Defendants, the Louisiana Board of Pardons, Sheryl Ranatza, Curtis Fremin, Alvin Roche, Anthony Marabella, and Bonnie Jackson, herein oppose the Plaintiff's Motion. The Plaintiffs' Motion is based upon three completely false pretenses, specifically: 1) Plaintiffs incorrectly contend that the Governor has the authority to "direct" the Louisiana Board of Pardons to conduct a clemency hearing; 2) Plaintiffs falsely allege that Governor Edwards' August 9, 2023, letter was intended to be such a "directive"; and, 3) Plaintiffs incorrectly contend that they are entitled to arbitrarily select a deadline by which their clemency hearings must be conducted and any recommendations resulting therefrom be sent to the Governor. Their Motion is factually and legally baseless and should be denied.

## TABLE OF CONTENTS

TABLE OF CONTENTS …………………………………………....    ii

TABLE OF AUTHORITIES ……………………………………….    iii

I.    FACTS AND PROCEDURAL HISTORY ……………………………    1

    a.  Louisiana's Clemency Structure ………………………………..    1

    b.  The Clemency Applications and the Governor's
       August 9, 2023, Letter…………………………………………    3

    c.  The Attorney General's and the District Attorneys' Lawsuits ……….    5

    d.  Post-Settlement Administrative Hearings ……………………………    7

II.    LEGAL STANDARD ……………………………………………    8

III.    LAW AND ANALYSIS ……………………………………………    9

    a.  The Plaintiffs Cannot Demonstrate That They are Substantially
       Likely to Succeed on the Merits……………………………………    9

          (1) The Attorney General's Alleged
             "Collusion and Overreach"……………………………….    12

    b.  Plaintiffs have not demonstrated any substantial threat if the
       preliminary injunction is denied…………………………………….    15

    c.  Plaintiffs Have No Threatened Injury; Meanwhile,
       the Board Has Already Canceled 41 Non-Capital
       Hearings As a Result of Plaintiffs' Filings ………………………….    17

    d.  The Injunction Would Disserve the Public Interest…………………    18

IV.    CONCLUSION…………………………………………………..    18

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Davis*,
 279 F.3d 674 (9th Cir.2002) ................................................................................. 14

*Bacon v. Lee*,
 549 S.E.2d 840 (NC 2001) .................................................................................... 14

*Baker v. Ivey*,
 No. 2:22-CV-375-RAH-SMD, 2023 WL 5499872 (M.D. Ala. June 23, 2023), *report and recommendation adopted*, No. 2:22-CV-375-RAH-SMD, 2023 WL 5493532 (M.D. Ala. Aug. 24, 2023) ............................................................................................................... 16

*Byrum v. Landreth*,
 566 F.3d 442 (5th Cir. 2009) ................................................................................... 9

*Calderon v. Thompson*,
 523 U.S. 538, 556, 118 S. Ct. 1489,140 L.Ed.2d 728 (1998) ................................. 18

*Canal Authority of State of Florida v. Callaway*,
 489 F.2d 567 (5th Cir.1974) ..................................................................................... 9

*Carter v. Hartley*,
 No. 1:12-CV-00829-JLT, 2012 WL 1898929 (E.D. Cal. May 23, 2012) ................. 17

*City of Los Angeles v. Lyons*,
 461 U.S. 95  (1983) ................................................................................................. 15

*Conn. Bd. of Pardons v. Dumschat*,
 452 U.S. 458, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) ............................................ 9

*Faulder v. Texas Bd. of Pardons & Paroles*,
 178 F.3d 343 (5th Cir. 1999) *cert. denied*, 527 U.S. 1017, 119 S.Ct. 2362,
 144 L.Ed.2d 767 (1999) ............................................................................ 10, 11, 12, 17

*Garcia v. Jones*,
 910 F.3d 188 (5th Cir. 2018) .................................................................................... 9

*Gladden v. Roach*, ...............................................................................................
 864 F.2d 1196 (5th Cir. 1989) ................................................................................. 15

*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*,
    442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ..................................................... 9

*Herrera v. Collins*,
    506 U.S. 390, 421, 113 S. Ct. 853, 122 L.Ed.2d 203 (1993) ..................................... 19

*Hoffman v. Jindal*, ........................................................................................................................
    No. CV 12-796-SDD-EWD, 2022 WL 969050 (M.D. La. Mar. 30, 2022), *reconsideration
    denied*, No. CV 12-796-SDD-EWD, 2022 WL 16571312 (M.D. La. Nov. 1, 2022) .............. 15

*Johnson v. Duffy*,
    No. 2:13-CV-1962 DAD P, 2014 WL 3956689 (E.D. Cal. Aug. 13, 2014) ............................ 17

*Jones v. Texas Dep't of Crim. Just.*,
    880 F.3d 756 (5th Cir. 2018) ........................................................................................... 9

*Lagrone v. Cockrell*,
    No. CIV.A.4:99-CV-0521-G, 2002 WL 1968246 (N.D. Tex. Aug. 19, 2002) ........................ 11

*Martel v Clair*,
    565 US 648 (2012) ......................................................................................................... 18

*Mississippi Power & Light Co. v. United Gas Pipe Line Co.*,
    760 F.2d 618 (5th Cir. 1985) ........................................................................................... 9

*Moody v. Rodriguez*,
    164 F.3d 893 (5th Cir.1999) ........................................................................................... 17

*Ohio Adult Parole Authority v. Woodard*,
    523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) ...................................... 9, 10

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ..................................................................................................... 15

*Parker v. State Bd. of Pardons and Paroles*,
    275 F.3d 1032 (11th Cir. 2001) .................................................................................... 14

*Randall v. Utah Bd. of Pardons & Parole*,
    No. 4:22-CV-27 DN, 2023 WL 5000993 (D. Utah Aug. 4, 2023) .......................... 17

*Roach v. Quarterman*,
    220 F. App'x 270 (5th Cir. 2007) ......................................................................... 11, 17

*Schad v. Brewer*,
   No. CV-13-01962-PHX-ROS, 2013 WL 5524547 (D. Ariz. Oct. 4, 2013), *aff'd,* 732 F.3d 946
   (9th Cir. 2013) .................................................................................................................... 13

*Sepulvado v. Louisiana Bd. Of Pardons and Parole*,
   171 Fed. Appx. 470 (5th Cir. 2006) ........................................................................ 10, 11, 17

*State of Texas v. Seatrain International, S.A.*,
   518 F.2d 175 (5th Cir.1975) .................................................................................................. 9

*Tamayo v. Perry*,
   553 F. App'x 395, 402 (5th Cir.2014) ................................................................................. 17

*Thompson v. Ranatza*,
   No. CV 17-0235-JWD-EWD, 2018 WL 4214412 (M.D. La. Aug. 17, 2018), *report and rec'd
   adopted*, No. CV 17-0235-JWD-EWD, 2018 WL 4088770 (M.D. La. Aug. 27, 2018)..... 10, 12

*Turner Indus. Grp., LLC v. Rain CII Carbon LLC,*
   No. CIV.A. 14-1031, 2014 WL 1870622 (E.D. La. May 8, 2014) ......................................... 16

*United States v. Vialva*,
   976 F.3d 458 (5th Cir. 2020)................................................................................................ 18

*Wellons v. Comm'r, Ga. Dep't of Corr*.,
   754 F.3d 1268 (11th Cir.2014) ............................................................................................. 9

**Constitutional Provisions**

La. Const. art. IV, § 5(E)(1)........................................................................................................ 2
La. Const. art. IV, § 5(E)(2) ........................................................................................................ 1

**Statutes**

La. R.S. 15:572(A)....................................................................................................................... 2
La. R.S. 49:961(A)(1) .................................................................................................................. 2

**Regulations**

22 LAC Pt V, §  105 .................................................................................................................... 1
22 LAC Pt V, §  203(E) ............................................................................................................... 4
22 LAC Pt V, §  213 .................................................................................................................. 1, 4
22 LAC Pt V, §  213(L)(1)............................................................................................................ 1
22 LAC Pt V, §  211(C) ............................................................................................................... 2

## I.    FACTS AND PROCEDURAL HISTORY

### a. Louisiana's Clemency Structure

Louisiana's Board of Pardons[1] ("the Board"), the members of which are appointed by Louisiana's Governor, are responsible for reviewing and acting on applications for pardon and commutation of sentence filed by persons convicted in Louisiana.  La. Const. art. IV, § 5(E)(2); La. R.S. 15:572.1.  With respect to clemency applications, the Board exercises complete authority as to whether a hearing sought by an applicant for clemency is granted or denied.  22 LAC Pt V, § 105. Should the Board grant a hearing and find that clemency is warranted, the Board provides it's recommendation of clemency or commutation of sentence to life imprisonment to the Governor for his consideration.  22 LAC Pt V, § 213(L)(1).  While only the Governor can grant clemency, the Board must first vote to recommend such action before the Governor can act. La. Const. art. IV, § 5(E)(1); La. R.S. 15:572(A).   The Governor's authority with respect to applications for clemency is entirely dependent upon a recommendation by the Board. *Id*.

La. R.S. 15:572.4 provides in relevant part that: "[w]ritten rules, regulations and procedures for consideration or clemency applications shall be adopted by the Board of Pardons by January 1, 1980. Such rules, regulations, and procedures shall be adopted in accordance with the procedures of R.S. 49:961(A)(1) and (2) and shall become effective upon approval of the governor."   The policies of the Board of Pardons are publicly available on its website and set forth a specific protocol for clemency with respect to capital cases, and such policies largely track provisions of the Louisiana administrative code cited herein.

There are several Board policies important to this case. One seemingly at the heart of Plaintiffs' arguments is Board Policy Section 02-207-POL, titled "Capital Cases," which  provides

---

[1] The correct name is the Board of Pardons and Parole.

1

that "the Governor *may* at any time place the case on the agenda and set a hearing for the next

scheduled meeting or at a specially called meeting of the Board."[2]   To be clear, the "hearing"

which the Governor may set is not a clemency hearing, as the Board alone holds the power to

determine whether or not one is afforded a clemency hearing.   Instead, the hearing referenced in

02-207-POL is the very administrative hearing which is occurring in the wake of the Settlement

Agreement, resulting in a determination of whether a clemency hearing will be granted.   Plaintiffs'

position that the provision provides the Governor with the power to set clemency hearings in

capital cases is not only legally baseless but is impossible in the face of the rest of the clemency

procedures.   For example, a clemency hearing could not occur at any "next scheduled [monthly]

meeting" because there is a legally required sixty (60) day delay between the granting of a hearing

and the hearing itself for purposes of notice. 22 LAC Pt V, § 211(C) provides:

> At least 60 days prior to public hearing date, the board shall give written notice of the date, time, and place to the following:
>
> 1.   the district attorney and sheriff of the parish in which the applicant was convicted and, in Orleans Parish, the superintendent of police;
>
> 2.   the applicant;
>
> 3.   the direct victim or the spouse or next of kin of the deceased victim. The notice is not required when the victim, or the spouse or next of kin of a deceased victim advises the board, in writing, that such notification is not desired;
>
> 4.   the Crime Victims Services Bureau of the Department of Public Safety and Corrections; and
>
> 5.   any other interested person who notifies the Board of Pardons, in writing, giving name and return address.

Despite the Plaintiffs' contentions, the Governor cannot "direct" the Board to grant a clemency

---

[2] R. Doc. 3-4.

hearing to an inmate, and the plain language of the Governor's August 9, 2023, letter, more specifically discussed below, illustrates that a "directive" was not his intent.

**b. The Clemency Applications and the Governor's August 9, 2023, Letter**

At all times pertinent to this matter, the Board was (and remains) comprised of Sheryl Ranatza, Curtis Fremin, Alvin Roche, Anthony Marabella, and Bonnie Jackson. In June of 2023, 56 inmates in the custody of the Louisiana Department of Public Safety & Corrections, all of whom have been sentenced to death, filed clemency applications with the Board. A July 5, 2023, letter from Board Chairman Sheryl Ranatza to Mr. Loren Lampert, Executive Director of the of the Louisiana District Attorneys Association, well-describes the strategy the Board intended to employ in the wake of this unprecedented receipt of a high number of capital clemency applications.[3] Mrs. Ranatza advised that the number of capital clemency applications far exceeded the average of 35 non-capital applications the Board typically receives in any given month, and that while the Board's ordinary process would be to complete administrative review of those applications the following month, it was deemed unfeasible and inappropriate to attempt such a feat by July.[4]

Nonetheless, she indicated that the Board believed it was important to process the applications as quickly as possible and notified Mr. Lampert that any capital cases which successfully passed the administrative review process would be docketed for hearing between the months of October and December of 2023.[5] Mrs. Ranatza expressed her understanding of the gravity of these matters and committed to notification of trial officials and victims' families such

---

[3] Exhibit A, Letter from Sheryl Ranatza to Loren Lampert, dated July 5, 2023.
[4] Exhibit A.
[5] Exhibit A.

to receive all information and input prior to the administrative review.[6]  She further advised that the Board would be well prepared for that process.[7]

Objections were raised as to whether the Board had the authority to waive a requirement set forth in 22 LAC Pt V, § 203(E) which provides that "Any offender sentenced to death may submit an application within one year from the date of direct appeal decision." This was important because the lack of a waiver necessarily meant that none of the Plaintiffs' clemency applications were timely under the law.  Noting that a different policy, 22 LAC Pt V, § 213, contained language expressly allowing the Board to waive "each of the provisions of [that] policy when it finds that there exists good and adequate cause . . ." the Board decided via resolution to request an Attorney General Opinion to seek legal advice as to whether the Board could waive the one-year preemptive period.  In Opinion 23-0083, the Louisiana Attorney General concluded "Rule 213(M) does not permit the Board to waive the one-year eligibility period contained in Rule 203."[8]

On July 24, 2023, the Board conducted a public meeting at which it adopted a motion to remove an agenda item where in a waiver of the one-year preemptive period would be considered. The Board's executive director, Mr. Francis Abbott, issued a press release announcing that in light of the Attorney General's opinion, the Board did not consider a waiver of Rule 203 and was thus forced to return the clemency applications.

On August 9, 2023, the Board received a *request* from the Governor, deemed a "Constitutional Directive" by the Plaintiffs in their Motion, to set the clemency applications for hearing. [9]  The most critical part of the letter – the Governor's actual request – is completely absent

---

[6] Exhibit A.
[7] Exhibit A.
[8] Exhibit C, Attorney General Opinion 23-0083.
[9] R. Doc. 3-3.

from the Plaintiffs' Motion.  Governor Edwards closed his letter by stating, "[a]fter thoughtful consideration, I am *asking* the Board to set these cases for hearing *in a manner least disruptive to the non-capital cases currently pending before the Board*."  (emphasis added).[10]  Board Policy Section 02-207-POL, titled "Capital Cases," provides that "the Governor *may* at any time place the case on the agenda and set a hearing for the next scheduled meeting or at a specially called meeting of the Board."[11] (emphasis added).  The Governor did not "direct" the Board to take any step, nor did his letter "place [any] case on the agenda and set a hearing for the next scheduled meeting or at a specially called meeting of the Board."  However, upon receipt of the Governor's *request*, the Board decided to set 20 of the capital clemency applications for hearings on the merits, commencing on October 13, 2023, and spanning through November 27, 2023.[12]

### c.  The Attorney General's  and District Attorneys' Lawsuits

In September, the Attorney General and six of Louisiana's District Attorneys filed lawsuits against the Board to enjoin those hearings. On September 26, 2023, nine of the capital clemency applicants filed petitions for intervention. On September 27, 2023, Chief Judge Don Johnson, of section 24 of the 19th Judicial District Court, *sua sponte* noticed his intent to consolidate the Attorney General and District Attorney Suits and, on September 28, 2023, scheduled a preliminary injunction hearing for October 3, 2023.

Before the scheduled preliminary injunction hearing, on September 29, 2023, the Board conducted a public meeting at which it voted to enter into a settlement agreement with the Attorney General and the six District Attorneys to resolve their claims and allow the Board to continue to

---

[10] R. Doc. 3-3.
[11] R. Doc. 3-4.
[12] R. Doc. 3-5.

review the previously scheduled clemency applications (the "Settlement Agreement"). The Settlement Agreement provides in relevant part that:

1) The Board would conduct administrative reviews of the clemency applications to determine whether or not to approve the applications for clemency at its meetings on October 13, November 8, November 13, and November 27;

2) The Board would not schedule any additional clemency applications for administrative review hearings prior to the end of the year;

3) Any capital clemency hearings scheduled following the administrative reviews would be conducted in accordance with all laws, rules and policies; and,

4) Any clemency hearing approved by the Board at an administrative review hearing would be scheduled based upon the Board's existing scheduling policy, which is no sooner than 60 days after the administrative review hearings.

Between October 1 and October 2, 2023, the Attorney General and six District Attorneys then moved to voluntarily dismiss their suits with prejudice.

This settlement did not constitute any violation of the Board's ordinary protocols. The Board traditionally conducted an administrative review process to determine whether or not an applicant would be granted a clemency hearing.[13] In the past, the administrative review process was conducted by the board outside of the Board's public hearings.[14] The Board recently decided to conduct said hearings at the public hearings.[15] The administrative review hearing allows an applicant's attorney, the prosecutor, any victim, family of the applicant and the victim, and the

---

[13] Exhibit B, Declaration of Francis Abbott at ¶ 3.
[14] Exhibit B at ¶ 4.
[15] Exhibit B at ¶ 5.

general public to provide comment to the Board.[16] The Board votes at the conclusion of an administrative review hearing, and a favorable vote would afford the inmate a clemency hearing, to be conducted at a later date but no sooner than 60 days.[17]

### d. Post-Settlement Administrative Hearings

On Friday, October 13, 2023, the Board conducted 5 administrative hearings over the span of nearly four hours for Plaintiffs Antoinette Frank, Clifford Deruise, Danny Irish, Emmet Taylor, and Winthrop Eaton.[18] After considering the entirety of the records, hearing competing comments from prosecutors, defense attorneys, victims' families,  advocates for the offenders, and members of the public, the Board voted[19] as follows:

1) Antoinette Frank: 2 votes to grant, 2 votes to deny;

2) Clifford Deruise: 2 votes to grant, 2 votes to deny;

3) Daniel Irish: 2 votes to grant, 2 votes to deny;

4) Emmet Taylor: 2 votes to grant, 2 votes to deny; and

5) Winthrop Eaton: 1 vote to grant, 3 votes to deny.

None of the inmates obtained a favorable vote from the Board, and thus none were granted clemency hearings.[20]  That does not change the fact that the process these inmates received was a far cry from a "toss of the coin" and far exceeded the "minimal procedural safeguards" set forth by the controlling jurisprudence discussed herein.

---

[16] Exhibit B at ¶ 6.
[17] Exhibit B at ¶ 7.
[18] The meeting was streamed live and can be viewed in its entirety at
https://www.youtube.com/watch?v=mEDGcwZ5ScM
[19] " . . .all actions of the Board shall require the favorable vote of at least four members of the Board." 22 LAC Pt V, § 211(H).
[20] Exhibit B at ¶ 8.

The relief sought by the Plaintiffs: 1) to enjoin Defendants from violating the Governor's directive to conduct clemency hearings for Plaintiffs; 2) to enjoin Defendants from converting the currently noticed clemency hearings into administrative reviews; 3) to enjoin Defendants from failing to schedule clemency hearings for Plaintiffs whose clemency hearings have not been scheduled to ensure that clemency hearings are completed by December 28, 2023; and, 4) conduct oversight of the clemency hearings to ensure that they are conducted fairly without arbitrariness, is illegal, outside of the scope of this Court's authority, and contrary to all jurisprudence.

## II.    LEGAL STANDARD

A movant is entitled to the "extraordinary remedy" of a preliminary injunction only if he establishes: '(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.' " *Jones v. Texas Dep't of Crim. Just*., 880 F.3d 756 (5th Cir. 2018)(*quoting Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *see also Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). "A preliminary injunction is an extraordinary remedy. It should only be granted if the movant has clearly carried the burden of persuasion on all four *Callaway* prerequisites. The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Mississippi Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618 (5th Cir. 1985) (*citing State of Texas v. Seatrain International, S.A.,* 518 F.2d 175, 179 (5th Cir.1975)); *see also Callaway*, 489 F.2d at 576.

### III.    LAW AND ANALYSIS

### a.  The Plaintiffs Cannot Demonstrate That They are Substantially Likely to Succeed on the Merits

It is well-established that no constitutional right to clemency exists.  *See Garcia v. Jones*, 910 F.3d 188 (5th Cir. 2018)(*citing Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) ("[A]n inmate has 'no constitutional or inherent right' to commutation of his sentence." (*quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280–82, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (applying *Dumschat's* reasoning to a death row inmate's petition for clemency)).  The Supreme Court's decision in *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998), did recognize a due process interest in the context of state clemency proceedings for death row inmates.  The holding in that case was provided by Justice O'Connor's concurring opinion. *Wellons v. Comm'r, Ga. Dep't of Corr.*, 754 F.3d 1268, 1269 n. 2 (11th Cir.2014) (recognizing Justice O'Connor's concurring opinion as "set[ting] binding precedent"). Justice O'Connor recognized that it was the "life" interest protected by the Due Process Clause itself guarantees "some minimal procedural safeguards" for state clemency proceedings involving death row inmates. *Woodard*, 523 U.S. at 289, 118 S.Ct. at 1254 (O'Connor, J., concurring).  A Court in the Middle District of Louisiana has acknowledged that according to well-established 5th Circuit law, "it is clear that there is an "extremely low threshold of judicial reviewability" in the consideration thereof."  *Thompson v. Ranatza*, No. CV 17-0235-JWD-EWD, 2018 WL 4214412 (M.D. La. Aug. 17, 2018), *report and rec'd adopted*, No. CV 17-0235-JWD-EWD, 2018 WL 4088770 (M.D. La. Aug. 27, 2018)(*citing Sepulvado v. Louisiana Bd. Of Pardons and Parole*, 171 Fed. Appx. 470 (5th Cir. 2006); *Faulder v. Texas Bd. of Pardons & Paroles*, 178 F.3d 343 (5th Cir. 1999) *cert. denied*, 527 U.S. 1017, 119

9

S.Ct. 2362, 144 L.Ed.2d 767 (1999)).

Plaintiffs allege that they are likely to succeed on the merits because "[d]efendants deliberately violated Louisiana law and the Pardon Board's own policies, practices, and procedures. . .". While the Board disagrees with Plaintiffs' factual contentions, even if the Court found them to be true, violation of law and/or policies does not constitute a due process violation according to well-established law. In *Faulder*, an inmate alleged that "the Board's procedures do not meet 'minimal due process' standards principally because the Board allegedly violated applicable state law and its own regulations, and Faulder received inadequate notice of issues the Board would consider." *Id*. at 344. The Fifth Circuit immediately gutted the value of plaintiff's allegations of violation of state law and the Pardon Board's own regulations, finding:

> These contentions are meritless. *In Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 274, 118 S.Ct. 1244, 1253, 140 L.Ed.2d 387 (1998), Justice O'Connor's concurring opinion stated only that minimal procedural safeguards apply to clemency proceedings. The low threshold of judicial reviewability is based on the facts that pardon and commutation decisions are not traditionally the business of courts and that they are subject to the ultimate discretion of the executive power. This is highlighted by Justice O'Connor's narrow view of when judicial intervention into clemency decisions might be warranted: where a state official "flipped a coin" to determine whether to grant clemency, or the state arbitrarily denied a prisoner any access to its clemency process.

*Id*. (Internal citations omitted). Since that holding, the Fifth Circuit has repeatedly invoked *Faulder* in the face of procedural claims. In *Roach v. Quarterman*, 220 F. App'x 270 (5th Cir. 2007), the Fifth Circuit again rejected an inmate's claim of a defective process, finding that the district court correctly concluded that the plaintiff merely pointed out parts of the clemency process with which he disagreed and that he provided no evidence that the consideration would be arbitrary or akin to tossing a coin. *Id*. at 275. In *Sepulvado v. Louisiana Bd. of Pardons & Parole*, 171 F. App'x 470 (5th Cir. 2006), the Fifth Circuit directly addressed a procedural challenge to the fact that Louisiana does not guarantee an inmate the right to a clemency hearing, ultimately finding:

> Sepulvado's complaint seeks to distinguish Louisiana's clemency procedure from those in other States, claiming, *inter alia,* because Louisiana law does not guarantee a clemency hearing, its procedure falls below the minimum due-process threshold. Other cases involving constitutional challenges to clemency procedures, including *Woodard* and *Faulder*, however, do not establish specific requirements States must follow.
>
> Louisiana state law allows every inmate to apply for clemency (which Sepulvado did). As shown *infra*, Sepulvado fails to state a claim in asserting Louisiana's clemency procedure falls below the minimum constitutional threshold.

*Id*. at 472.  The Court noted that Sepulvado was allowed to apply for clemency and did not allege that the Board failed to consider his application prior to rejecting it, finding that "under the highly deferential *Faulder* standard of review, Sepulvado does not state a due-process-denial claim . . .". *Id*. at 473.  District courts within this Circuit, applying *Woodard* and *Faulder*, have come to similar conclusions. In *Lagrone v. Cockrell*, No. CIV.A.4:99-CV-0521-G, 2002 WL 1968246 (N.D. Tex. Aug. 19, 2002), an inmate alleged that Texas' clemency procedures were unconstitutional "because only one live clemency hearing has been held in the past thirty years, because the board members vote on cases by facsimile, and because no commutation of a death penalty has been granted where it was sought by the convicted person, rather than the state officials."  Citing *Woodard and Faulder*, the Court concluded:

> Thus, as these two opinions make clear, eight justices of the Supreme Court have expressed the view that a prisoner under a death sentence is, at most, entitled to access to a clemency process where the decision whether to grant clemency is not decided in an arbitrary manner. While Lagrone has pointed to several aspects of the Texas clemency process with which he disagrees, there is no evidence that he will be denied access to the process when the time comes, nor is there evidence that the decision is made in an arbitrary manner.

Similarly, when considering this issue in *Thompson v. Ranatza*, *supra*, Magistrate Judge Erin Wilder-Doomes concluded that, "although Plaintiff had the right to have his pardon application evaluated and to have it not be rejected arbitrarily (as by the mere flipping of a coin, for example), it is clear that Plaintiff did not have a right to a hearing and did not have a right to any specific

procedures in the evaluation thereof."

The instant Plaintiffs have not plausibly alleged or provided any evidence that they have been subjected to something akin to the "flip of a coin." They have not alleged that their clemency applications were arbitrarily rejected. Rather, Plaintiffs argue without legal support that they have some right to avoid participation in an administrative hearing before the Board wherein a determination will be made as to whether the Plaintiff applicants will be afforded a clemency hearing. They further provide no jurisprudential or statutory support that they have some right to demand that all capital clemency hearings be completed and said recommendations be presented to the Governor by December 28, 2023. The allegations set forth by the instant Plaintiffs – a violation of state law and the Board's own policies –are *identical* to those presented in *Faulder* and should be met with the same fate. There is no basis under the law for Plaintiffs' success, and thus the Plaintiff cannot show a substantial likelihood of success on the merits.

### (1)    The Attorney General's Alleged "Collusion and Overreach"

Plaintiffs allege, among other things, that the Attorney General "made statements" opposing clemency; he issued an Attorney General Opinion which concluded that a policy, which did not allow Board modification, could not be modified; and he did not authorize the Board's original attorney to continue representing the Board. While the Board disputes many of the factual allegations, even if those allegations are taken as true, they do not rise to the standard required by Plaintiff to show they have a likelihood of success on the merits on this overreach / undue influence theory.

In *Schad v. Brewer*, No. CV-13-01962-PHX-ROS, 2013 WL 5524547 (D. Ariz. Oct. 4, 2013), *aff'd,* 732 F.3d 946 (9th Cir. 2013), an inmate set to be executed approximately 15 days after filing requested stay of execution and injunctive relief. He included declarations from 5

former Parole Board members who stated that, after recommending clemency in two "high profile" cases, they were called in for meetings with two members of the Governor's staff. The staff members relayed the position that "that the Governor's office wanted Board Members who would vote the wishes of her office, rather than vote their conscience, based on the facts and circumstances of each case." *Id*. at 2. One Board member declared that:

> [He] learned shortly after taking office that the Board "is not independent from the Governor." "Not long after I was sworn in, I was called to the first of several 'come to Jesus' meetings with Scott Smith and other individuals representing Governor Brewer." According to Hernandez, he was lectured about the Governor's policy to be tough on crime and was told, "We don't want another Macumber or Flibotte." Hernandez understood this to mean that he was expected to vote against clemency in "particular kinds of cases." He further asserts that during his short time on the Board, "the other members understood clearly that they risked losing their jobs if they voted contrary to the Governor's wishes" and that current Board member Ellen Kirschbaum said, "What would the Governor think?" in response to Hernandez's remark that she was "always a no" vote.

*Id*. at 2. (record citations omitted). After the Governor denied clemency, the Board members were replaced. *Id*. The former Board members, some who had served for as long as 21 years, believed that their removal was influenced by their decisions to vote with their conscience. *Id.*

In its analysis, the district court cited *Woodard* and the "cautious approach in determining whether the 'minimal procedural safeguards' applicable to clemency under *Woodard* require that a decision maker be free of bias." *Id*. at *6. The Court further referenced *Anderson v. Davis*, 279 F.3d 674, 675 (9th Cir.2002), where a capital prisoner sought to remove the Governor of California from the clemency process by asserting that he had an alleged "blanket policy vis à vis murderers to deny all applications of executive clemency out-of-hand without exercising any judgment on the particular case or prisoner before him." The Ninth Court denied the request for injunctive relief and a stay of execution after noting that other courts "have uniformly rejected allegations that due process is violated by a governor who adopts a general policy of not granting clemency in capital cases." *Id*. at *6 (*citing Anderson*, 279 F.3d at 676).

The district court went on to analyze *Parker v. State Bd. of Pardons and Paroles*, 275 F.3d 1032 (11th Cir. 2001)(per curiam), in which:

> a capital prisoner unsuccessfully sought injunctive relief and a stay of execution based on alleged bias of the board, including that of its chairman, who several years prior allegedly stated: "No one on death row [will] ever get clemency as long as [I am] Chairman of the Board." The Eleventh Circuit affirmed the district court's crediting of the chairman's testimony at a hearing that he now "has an open mind and listens to all of the clemency cases that come before him prior to voting on them." The court therefore declined to decide whether a "closed mind" would amount to a violation of due process.

Id. at 1034, 1037  (alteration in original)(internal citations omitted).

Finally, the district court cited a North Carolina Supreme Court case, in which prisoners sought to have the Governor declared as an impartial arbiter of his clemency petition on the grounds that the Governor had previously served as the state's Attorney General throughout all of the plaintiffs' post-conviction proceedings and had served as the prosecutor on one of the defendant's cases. *Bacon v. Lee*, 549 S.E.2d 840, 849 (NC 2001).  The Court reasoned:

> This, plaintiffs argued, precluded the governor from fairly considering their clemency requests and rendered him unqualified to sit as a neutral and impartial decision maker. In a lengthy opinion, the court concluded that Woodard did not intend "to disrupt the orderly role of the executive in discharging clemency power by making his or her background or previous life experiences a justiciable controversy" under the Due Process Clause, whether alleged on an "inherent conflict of interest" theory or an "actual bias" theory. Instead, the court found that Woodard required only that state clemency procedures provide notice and an opportunity to participate in the proceedings, and that "the clemency decision, though substantively a discretionary one, is not reached by means of a procedure such as a coin toss."

*Id*. (internal citations omitted).  The district court concluded that the Plaintiff had failed to demonstrate a likelihood of success on the merits and denied the injunctive relief sought. *Id*. at 9. The speculative contentions with respect to the Attorney General in this case have resulted in no evidence the Plaintiffs can point to that they were deprived of due process in the consideration of their clemency applications.  The successful completion of five of the administrative hearings, at which the applicants were afforded meaningful consideration by the members of the Board, proves

14

that no action of the Attorney General affords them relief.

  **b.**  **Plaintiffs have not demonstrated any substantial threat if the preliminary injunction is denied.**

  None of the Plaintiffs has a scheduled execution date, thus they cannot plausibly claim that the alleged harm is imminent. The Fifth Circuit, relying on Supreme Court precedent, has held that "one seeking injunctive relief must demonstrate a real and immediate threat that he will be subject to the behavior which he seeks to enjoin." *Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir. 1989) (emphasis added) (*citing City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again – a 'likelihood of substantial and immediate irreparable injury.'")) (*quoting O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). In 2022, this Court dismissed an action challenging Louisiana's lethal injection protocol on the grounds that the state of Louisiana was unable to obtain execution drugs. *Hoffman v. Jindal*, No. CV 12-796-SDD-EWD, 2022 WL 969050 (M.D. La. Mar. 30, 2022), *reconsideration denied*, No. CV 12-796-SDD-EWD, 2022 WL 16571312 (M.D. La. Nov. 1, 2022). Secretary Leblanc's affidavit clearly articulated: "In light of the circumstances outlined above, DPSC is presently unable to procure any drugs that could be used for lethal injection and will not be able to do so in the foreseeable future. Should a death warrant be issued in the future, DPSC will not be able to carry out the order for lack of access to lethal injection drugs." *Id.* at *10. This Court noted that, "[g]iven the Defendants' virtual inability to obtain lethal injection drugs, Plaintiffs cannot demonstrate a reasonable expectation that Defendants will resume executing prisoners without significant and substantial changes to the execution protocol or the law. Also, Plaintiffs cannot demonstrate that the duration of the violation is so short that a future action could not be fully litigated without becoming moot. Indeed, if a live controversy re-

emerges, Plaintiffs may employ the same procedural mechanisms they have previously used to seek the relief they desire." *Id.* at *11. Likewise, the instant Plaintiffs can present no evidence, particularly given the lack of a single death warrant as to any of them, that they are imminently at risk of execution.

Plaintiffs allege that the substantial threat they face is that if the clemency hearings do not occur on their proposed timeline – a timeline which is unsupported by any jurisprudence, statute, or board rule – then they will "lose an opportunity to commute a death sentence to life in prison." Courts in this circuit have already dismissed the notion of the alleged "arbitrary changing of a hearing date less than two weeks before a hearing" being a due-process basis for issuance of injunctive relief. *Turner Indus. Grp., LLC v. Rain CII Carbon LLC,* No. CIV.A. 14-1031, 2014 WL 1870622 at FN. 13 (E.D. La. May 8, 2014). This concept – that there is no right to a hearing date of one's choice or a deadline – spans all federal circuits. *See Baker v. Ivey*, No. 2:22-CV-375-RAH-SMD, 2023 WL 5499872 (M.D. Ala. June 23, 2023), *report and recommendation adopted*, No. 2:22-CV-375-RAH-SMD, 2023 WL 5493532 (M.D. Ala. Aug. 24, 2023)(Parole Board's failure to provide a parole hearing date does not constitute a due process violation); *Carter v. Hartley*, No. 1:12-CV-00829-JLT, 2012 WL 1898929 (E.D. Cal. May 23, 2012)(Parole Board's failure to set a hearing date within 5 years is not a due process violation); *Randall v. Utah Bd. of Pardons & Parole*, No. 4:22-CV-27 DN, 2023 WL 5000993 (D. Utah Aug. 4, 2023)(Parole Board's scheduling of hearing in 2039 not a due process violation for purposes of injunctive relief); *Johnson v. Duffy*, No. 2:13-CV-1962 DAD P, 2014 WL 3956689 (E.D. Cal. Aug. 13, 2014)(Parole Board's refusal to advance hearing date after request by inmate does not constitute a due process violation). Plaintiffs have provided no evidence that the clemency applications will not be considered by the Board of Pardons. Plaintiffs have provided no evidence that the Board of

Pardons will not be fair and impartial at such time the clemency petitions are considered. The judiciary has a "narrow role in the uniquely executive task of considering clemency[.]" *Tamayo v. Perry*, 553 F. App'x 395, 402 (5th Cir.2014); *see also Faulder*, 178 F.3d at 344–45; *Moody v. Rodriguez*, 164 F.3d 893 (5th Cir.1999). Plaintiffs in this matter "d[o] not provide evidence that [they] would be denied access to the [clemency] process or evidence that the decision will be made arbitrarily." *Quarterman*, 220 F. App'x at 275.

Plaintiffs have not demonstrated any substantial threat if they are required to participate in an administrative hearing prior to any ultimate clemency hearing, as none of the Plaintiffs have an execution date. The Plaintiffs are not even entitled to clemency hearings in Louisiana, they merely have the right to apply. *Sepulvado*, 171 F. App'x 476. The Plaintiffs position that they are entitled to have a guaranteed clemency hearing, to be conducted by a certain date less than two months from now, is contrary to all law.

### c.   Plaintiffs Have No Threatened Injury; Meanwhile, the Board Has Already Canceled 41 Non-Capital Hearings as a Result of Plaintiffs' Filings

In Governor Edwards' letter to the Board, he specifically asked the Board to manage these cases "in a manner least disruptive to the non-capital cases currently pending before the Board." While the Board made every effort to do just that, the flurry of litigation and legal chess-match which followed has resulted in the delay of over forty hearings of non-capital prisoners, who have the same right to clemency consideration as the Plaintiffs, and who initiated their requests long before the Plaintiffs. Given that none of the Plaintiffs in this matter have scheduled execution dates, and that the Board has agreed to consider *all* of the filed clemency applications, it is difficult to discern what "injury" the Plaintiffs are threatened with by being subjected to an administrative review, and if granted, a clemency hearing no less than 60 days thereafter. Should this Court grant the Plaintiffs' request, the Board's growing backlog of non-capital cases, not due to any fault of

17

the Board or the applicants, would continue to grow and the process would grind to a halt for non-capital clemency seekers for months.  Alternatively, should the Court deny the Plaintiffs' Motion and allow the fair and constitutionally adequate administrative hearings to proceed, the Plaintiffs will simply wait their respective turns for fair and impartial consideration of their applications.[21]

   **d.      The Injunction Would Disserve the Public Interest.**

While it is undisputed that none of the Plaintiffs have a scheduled execution date, public policy is disserved by enjoining or otherwise affecting a legally imposed sentence upon a guilty person.  The public interest more greatly lies in allowing the State to carry out its otherwise-valid judgment because "protecting against abusive delay is an interest of justice." *Martel v Clair*, 565 US 648, 662 (2012). The public's interest in timely enforcement of the death sentence outweighs [a plaintiff's] request for more time. *United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020)(citing *Calderon v. Thompson*, 523 U.S. 538, 556, 118 S. Ct. 1489, 1501, 140 L.Ed.2d 728 (1998) (stating that delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike") (quoting *Herrera v. Collins*, 506 U.S. 390, 421, 113 S. Ct. 853, 871, 122 L.Ed.2d 203 (1993) (O'Connor, J., concurring)).

## IV.    CONCLUSION

Injunctive relief is an extraordinary remedy and should be considered the exception rather than the rule.  The Plaintiffs have failed to meet their burden under the law on any of the four Calloway prongs.   The Plaintiffs, none of whom has an execution date, simply demand they be given a hearing which they have no right to on a timeline which they have no right to demand. This is unsupported by the law and should be summarily dismissed by this Court.  The Plaintiffs respectfully request that this Honorable Court deny the Motion for Preliminary Injunction.

---

[21] Exhibit B at ¶ 9.

Respectfully submitted,

**RODRIGUE & ARCURI, LLP**

By:    */s/Blake J. Arcuri*
       Blake J. Arcuri (LSBN 32322)
       Laura Cannizzaro Rodrigue (LSBN 30428)
       1615 Poydras St., Ste. 1250
       New Orleans, LA 70112
       (504) 592-4600
       bja@rodrigueacuri.com; lcr@rodriguearcuri.com
       **Attorneys for Defendants**


## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2023, I have caused this pleading to be filed in the Court's CM/ECF system and have served any parties or counsel not enrolled in the CM/ECF system via U.S. Mail, postage prepaid, and/or by electronic mail.

*/s/Blake J. Arcuri*