**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**


ALLEN ROBERTSON, ET AL                    CIVIL ACTION

VERSUS
                                          23-1494-SDD-RLB
LOUISIANA BOARD OF PARDONS,
ET AL.


## RULING


This matter is before the Court on the *Motion for Preliminary Injunction* filed by

Plaintiffs Allen Robertson, Anthony Bell, Daniel Blank, Scott Bourque, David Bowie,

Quincy Broaden, Henri Broadway, David Brown, Gregory Brown, Laderrick Campbell,

Jeffrey Clark, Sedwric Clark, Nathaniel Code, Michael Cooks, James Copeland, Frank

Cosey, Kevin Daigle, Percy Davis, Curtis Deal, Clifford Deruise, Felton Dorsey, Darrell

Draughn, Jimmy Duncan, James Dunn, Winthrop Eaton, Cedric Edwards, Antoinette

Frank, Michael Garcia, Bobby Hampton, Clarence Harris, Jessie Hoffman, Dacarius

Holliday, Daniel Irish, Kyle Joekel, Glynn Juniors, Tracy Lee, Donald Leger, Julius Lucky,

Jeremiah Manning, Jesse Montejo, Lee Roy Odenbaugh, Manuel Ortiz, Marcus Reed,

Jason Reeves, Larry Roy, Chris Sepulvado, Willie Tart, Antoine Tate, Emmett Taylor,

Michael Taylor, Lamondre Tucker, James Tyler, Todd Wessinger, and Donald Wright

("Plaintiffs").[1]  Defendants, the Louisiana Board of Pardons and Parole, Sheryl Ranatza,

Curtis Fremin, Alvin Roche, Anthony Marabella, and Bonnie Jackson (collectively, the

---

[1] Rec. Doc. 3.

Board") filed an *Opposition* to this motion,[2] to which Plaintiffs filed a *Reply*.[3]  For the reasons set forth below, the Court finds that Plaintiffs' Motion should be denied.

## I.    BACKGROUND

Plaintiffs, death row Louisiana prisoners, filed this action under 42 U.S.C. § 1983, alleging that Defendants have violated their Eighth and Fourteenth Amendment rights under the Federal Constitution.  Plaintiffs claim Defendants have violated their due process and equal protection rights by cancelling Plaintiffs' clemency hearings and/or willfully violating the Governor's directive to schedule clemency hearings.[4]

The Louisiana Board of Pardons and Parole ("the Board") is made up of members appointed by the Governor of Louisiana, and it is charged with reviewing and acting on applications for pardon or commutation of sentences filed by persons convicted in Louisiana.[5] As for clemency applications, governing regulations give the Board complete discretionary authority to determine whether a hearing is granted to a clemency applicant.[6]  If the Board grants a clemency hearing and finds that clemency is warranted, it then provides a recommendation to the Governor for his consideration.[7]  Although the power to grant clemency ultimately resides with the Governor, he lacks the authority grant clemency without an affirmative recommendation from the Board.[8]

Louisiana law provides that: "[w]ritten rules, regulations and procedures for consideration or clemency applications shall be adopted by the Board of Pardons by January 1, 1980. Such rules, regulations, and procedures shall be adopted in accordance

---

[2] Rec. Doc. 25.
[3] Rec. Doc. 29.
[4] Rec. Doc. 1.
[5] La. Const. art. IV, § 5(E)(2); La. R.S. 15:572.1.
[6] 22 LAC Pt V, § 105.
[7] 22 LAC Pt V, § 213(L)(1).
[8] La. Const. art. IV, § 5(E)(1); La. R.S. 15:572(A).

with the procedures of R.S. 49:961(A)(1) and (2) and shall become effective upon approval of the governor."[9] The Board's policies are publicly available on its website, and they delineate the specific protocol for clemency in capital cases in accordance with the provisions of the Louisiana administrative code.

In June and July, 2023, 56 death row inmates applied for clemency with the Board. In the wake of this unprecedented volume of requests in a short time period, Board Chairman Sheryl Ranatza ("Ranatza") sent a letter dated July 5, 2023 to Loren Lampert ("Lampert"), Executive Director of the Louisiana District Attorneys Association, explaining the Board's proposed strategy to handle these requests.[10]  In this letter, Ranatza advised that the number of clemency applications "far exceeded the average of 35 non-capital applications the Board typically receives in any given month," and the Board "deemed unfeasible and inappropriate" any attempt to employ the ordinary process of completing administrative review of the applications by July.[11]  However, feeling the need for expediency, Ranatza advised Lampert that any capital cases that survived administrative review would be set for hearing between October and December of 2023.[12]  She also explained the Board's plans to notify trial officials and victims' families as part of the process.[13]

Subsequently, objections were raised regarding the Board's authority to waive the requirement set forth in 22 LAC Pt V, § 203(E), which provides that "Any offender sentenced to death may submit an application within one year from the date of direct

---

[9] La. R.S. 15:572.4.
[10] Rec. Doc. 25-1.
[11] Rec. Doc. 25, p. 3.
[12] Rec. Doc. 25-1.
[13] *Id.*

appeal decision." Without this waiver, none of the clemency applications were timely under Louisiana law. However, 22 LAC Pt V, § 213 allows the Board to waive "each of the provisions of [that] policy when it finds that there exists good and adequate cause to suspend said provisions and adopt a different procedure which it finds to be better suited to the exigencies of the individual case before it." Thus, on July 18, 2023, by way of resolution, the Board sought an Attorney General Opinion regarding the Board's authority to waive the one-year preemptive requirement. In short, Attorney General Jeff Landry ("AG Landry") concluded that the Board lacked the authority to consider the applications on an emergency basis.[14] AG Landry opined that the Board could not waive Rule 203(E)'s one-year eligibility requirement under the "catchall" waiver found at Rule 213(M)[15]

AG Landry further opined that, "even assuming *arguendo* that the eligibility period provided in Rule 203(E) falls within the reach of Rule 213(M)'s waiver authority, such a waiver would be contrary to law" under La. R.S. 49:955, La. R.S. 49:961, and La. R.S. 15:572.4.[16] AG Landry further explained his position:

> An administrative board or agency may not exceed the statutory authority set forth by the legislature. It may be permissible for the Board to waive certain requirements set forth in rule by the Board; however, the procedures for waiving the rule must be themselves adopted and adequately set forth in rule. The broad and ill-defined waiver in Rule 213(M) ostensibly empowers the Board to repeal portions of its own rules and enact new ones at will, on an ad-hoc basis, and without any notice to the public. Such a result is impermissible under Louisiana law.[17]

---

[14] Rec. Doc. 315, A.G. Op. 23-0086 (July 18, 2023).
[15] *Id.*
[16] *Id.* at pp. 1-2.
[17] *Id.* at p. 2.

AG Landry discussed the requirement of public access to and notice of agency decision-making in the promulgation and repeal of administrative agency rules, set forth in the Administrative Procedure Act (the "APA"), La. R.S. 49:950, *et seq.*, and concluded that Rule 213(M) would impermissibly allow the Board to repeal or create agency rules arbitrarily and outside of the legal requirements of Louisiana's APA.[18]

AG Landry acknowledged that, under "extraordinary circumstances," the APA, La. R.S. 49:962(A)(1), allows for the adoption of emergency rules in lieu of ordinary rulemaking provisions for specific reasons.[19]  However, because none of the enumerated emergencies were present, the AG concluded and advised the Executive Director of the Board that, in his view, "Rule 213(M) does not permit the Board to waive the one-year eligibility period contained in Rule 203."[20]

On July 24, 2023, in a public meeting conducted by the Board, Plaintiffs contend Assistant AG Grant Willis "counseled" the Board in accordance with AG Landry's opinion.[21]  During this meeting, the Board adopted a motion to remove from the agenda any consideration of the Rule 213 waiver.  Francis Abbott, the Board's Executive Director, issued a press release announcing that the clemency applications would be returned based on the AG's opinion.

Following this meeting, Plaintiffs contend that, pursuant to his constitutional authority, on August 9, 2023, Governor John Bel Edwards "directed" the Board to

---

[18] *Id.* at pp. 2-3.
[19] These reasons are:  (a) to prevent imminent peril to the public health, safety, or welfare; (b) to avoid sanctions or penalties from the United States; (c) to avoid a budget deficit in the case of the medical assistance program; (d) to secure new or enhanced federal funding; or (e) to effectively administer provisions of law related to the imposition, collection, or administration of taxes when required due to time constraints related to congressional, legislative, or judicial action.  *Id.* at p. 3.
[20] *Id.*
[21] Rec. Doc. 3-7.

schedule clemency hearings for these 56 inmates.  Board Policy 02-207 provides that, "[n]otwithstanding any provision to the contrary by Board policy, in any case in which the death sentence has been imposed, the Governor may at any time place the case on the agenda and set a hearing for the next scheduled meeting or at a specially called meeting of the Board."  The Board claims this letter from the Governor was not a "directive," but rather a "request" from the Governor to set the clemency applications for hearing.[22] In any event, on August 10, the Board made the discretionary decision to set 20 capital clemency applications for hearing on the merits between October 13 and November 27, 2023.[23]

About a month later, several parish district attorneys and AG Landry filed lawsuits against the Board in state court to enjoin the clemency hearings. Although the Board is typically represented by the Louisiana Attorney General, given AG Landry's adverse position to the Board in the state court suit, the Board sought independent counsel and retained J. Arthur Smith ("Smith") to represent it. Smith argued on behalf of the Board that granting a preliminary injunction in favor of the DAs and AG Landry would violate separation of powers under the Louisiana state constitution and interfere with the Governor's exclusive pardon power.[24]

Despite his adverse interests to the Board in the state court suit, AG Landry terminated Smith's representation of the Board[25] and purportedly retained the firm of Sher Garner Cahill Richter Klein & Hilbert, L.L.C ("Sher Garner") to represent the Board. Through Sher Garner, the Board ultimately negotiated a settlement in the state court action to resolve all the injunction cases brought by the AG and DAs. The details of this

---

[22] Rec. Doc. 25, p. 4.
[23] Rec. Doc. 3-3.
[24] Rec. Doc. 3-9.
[25] Rec. Doc. 3-10.

Settlement Agreement were not stated in the Board's open hearing, but Plaintiffs contend that a partially executed copy of the Agreement revealed the following terms: 1) the previously scheduled capital clemency hearings would be canceled and transformed into "administrative reviews." At these reviews members of the Board would determine if the applicant would be granted a hearing; 2) the Board's schedule for administrative reviews must remain the same, and any clemency hearings granted must be held at least 60 days later. (As a result, only 5 capital clemency applicants could even potentially receive a clemency hearing while Governor John Bel Edwards was in office); 3) the Board would refuse even an administrative review any other capital Clemency Applications that were pending before them.[26]   Two days after the Board voted to approve the Settlement Agreement, all DAs and the AG dismissed the state court action for preliminary injunctions.

Plaintiffs express their belief that Sher Garner "illegally" represented the Board.[27] Subsequent to the filing of this federal action and the pending motion, on October 19, 2023, State Court Judge Richard "Chip" Moore disqualified the Sher Garner firm from representing the Board based on existing conflicts of interests.  Judge Moore was highly critical of AG Landry's "end-around" maneuvering in the matter despite his obvious and significant conflicts of interests.   Plaintiffs have moved the state court to void the Settlement Agreement, and that issue remains pending before Judge Moore.

---

[26] Rec. Doc. 3-1, pp. 7-8.  The actual Settlement Agreement is found at Rec. Doc. 1-12; Plaintiffs' version of the terms are not fully supported by the terms of Agreement.
[27] *Id*. at p. 8.

## II.    PARTIES' ARGUMENTS

### A.  Plaintiffs' Position

Plaintiffs move for a preliminary injunction asking the Court to enjoin the Board from violating the Governor's Directive and implementing the terms of the Settlement Agreement. Plaintiffs contend they are substantially likely to succeed on the merits because "Defendants deliberately violated Louisiana law and the Pardon Board's own policies, practices, and procedures, knowing that it would result in the increased risk of execution of some or all of Plaintiffs."[28]  Plaintiffs rely on Justice O'Connor's concurrence in *Ohio Adult Parole Authority v. Woodard*,[29] arguing that AG Landry has "manipulated the Plaintiffs' clemency proceedings to the point of rendering them all but meaningless."[30] Plaintiffs discuss the exclusive power of the Governor over pardons and clemency and detail the process utilized by the Board in carrying out its function of hearing clemency applications.   Plaintiffs argue that "[t]he Board's violation of its own rules to cancel scheduled hearings and preclude any additional hearings from being scheduled violated Plaintiffs' rights to due process."[31]  Plaintiffs claim the terms of the Settlement Agreement present "new, unwritten procedural hurdles" that would "be applied for the first time, retroactively, to Plaintiffs."[32]  Plaintiffs aver that the Board has never "granted a hearing, either on its own accord or at the lawful directive of the governor, and then rescinded the hearing. These new procedural hurdles, unwritten rules, and rescissions of hearings, intentionally violate the Governor's directive, serve as substantive infringement of

---

[28] *Id.* at p. 9.
[29] 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998).
[30] Rec. Doc. 3-1 at p. 12.
[31] *Id.* at p. 18.
[32] *Id.* at p. 19.

Plaintiffs due process rights."[33]  Finally, Plaintiffs maintain that the clemency process has been "infected by the improper interference by" AG Landry rending Louisiana's clemency scheme "constitutionally defective."[34]   Plaintiffs accuse the Board of "misconduct," arguing it "violat[ed] the Governor's directive and enter[ed] into a void and unenforceable settlement agreement" which has resulted in the violation of Plaintiffs' constitutional rights.[35]

As to irreparable harm, Plaintiffs maintain that they "face a real possibility of death if this preliminary injunction is not granted."[36]  Plaintiffs characterize this harm as "the increased risk of execution of some or all Plaintiffs."[37]

Turning to the balancing of Defendants' potential harm if the preliminary injunction is granted and the effect on the public interest, Plaintiffs contend that only they face a risk of harm; Defendants face none if the Court enjoins the Board's actions. Plaintiffs also contend a preliminary injunction would serve the public interest by "enforcing the Governor's constitutional authority to grant clemency," by ensuring state laws are followed and the state constitution is given "full effect," and by ensuring that the "criminal justice system operates as intended and does not waste resources."[38]

### B.  The Board's Position

The Board disputes Plaintiffs' characterization of the Governor's powers in the clemency process.  It also disagrees with Plaintiffs' interpretation of the Board's policies and its conduct in handling their clemency applications.  The Board also disagrees with

---

[33] *Id.*
[34] *Id.* at p. 11.
[35] *Id.* at p. 19.
[36] *Id.* at p. 20.
[37] *Id.* at p. 9.
[38] *Id.* at pp. 20-21.

Plaintiffs' interpretation of applicable jurisprudence.  First, the Board takes issue with Plaintiffs' claim that the Governor "directed" the Board to set clemency hearings, citing the Board's own discretionary authority to set such matters.  Further, the Board discusses the precise language of the Governor's letter wherein he states he is "asking" the Board to set the cases for hearing "in a manner least disruptive to the non-capital cases currently pending before the Board."[39]  The Board maintains that the Governor's letter constituted a *request* rather than a *directive*, which is supported by the context of the entire letter.

Second, the Board maintains that the terms of the state court Settlement Agreement do not violate any ordinary protocols. The Board has traditionally conducted an administrative review process to determine whether a clemency hearing is warranted.[40]  Although in the past, the Board conducted administrative reviews outside of public hearings, the Board recently decided to conduct this process in public hearings.[41] An administrative review allows an applicant's attorney, prosecutor, any victim, and victim's family member, and the general public to provide comments to the Board.[42]  At the conclusion of an administrative review hearing, the Board votes on whether to set the matter for a clemency hearing to be conducted "at a later date but no sooner than 60 days."[43] Pursuant to the Settlement Agreement, the Board conducted five administrative review hearings on October 13, 2023; none of the inmates received enough votes to advance to a clemency hearing.[44]  The Board maintains the process received by these

---

[39] Rec. Doc. 3-3.
[40] Rec. Doc. 25-2, Declaration of Francis Abbott, ¶ 3.
[41] *Id.* at ¶¶ 4-5.
[42] *Id.* at ¶ 6.
[43] *Id.* at ¶ 7.
[44] *Id.* at ¶ 8.

inmates was certainly not the "toss of the coin" arbitrary denial of any access to the clemency process described in *Woodard*.

The Board argues Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits as a matter of fact and law, noting extensive jurisprudence holding that there is no constitutional right to clemency or a clemency hearing.[45]  The Board disputes the Plaintiffs' factual allegations in this matter; however, the Board maintains that even if those facts were true, the law is clear that a violation of the Board's own policies does not constitute a due process violation.  As the Fifth Circuit held in in *Faulder v. Texas Board of Pardons and Paroles*, minimal procedural safeguards in the clemency process are required,[46] but allegations that "the Board ... violated state law and its own regulations" was not an example of the type of "extreme situation[ ]" that Justice O'Connor identified as a potential constitutional violation in her concurring opinion in *Woodard*.[47] The *Faulder* court also noted that, because clemency "decisions are not traditionally the business of courts," there is an extremely "low threshold of judicial reviewability."[48]  The Board cites to numerous cases within the Fifth Circuit that have followed *Faulder*.[49]

The Board claims Plaintiffs have failed to plead facts or present evidence establishing that they have been arbitrarily denied access to Louisiana's clemency

---

[45] Rec. Doc. 25, p. 9 (citing *Garcia v. Jones*, 910 F.3d 188 (5th Cir. 2018)(citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) ("[A]n inmate has 'no constitutional or inherent right' to commutation of his sentence." (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280–82, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (applying *Dumschat*'s reasoning to a death row inmate's petition for clemency))).

[46] *Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343, 344 (5th Cir.), *cert. denied*, 527 U.S. 1017, 119 S.Ct. 2362, 144 L.Ed.2d 767 (1999) (stating clemency process requires minimal procedural safeguards).

[47] *Id.* at 344–45 (citing *Woodard*, 523 U.S. at 289, 118 S.Ct. 1244 (O'Connor, J., concurring)); *see also Tamayo v. Perry*, 553 F. App'x 395, 402 (5th Cir. 2014) (holding no procedural due process violation where Board members allegedly communicated with interested parties in violation of the Board's own rules)(emphasis added).

[48] *Id.*

[49] Rec. Doc. 25, pp. 10-12.

process or that their administrative reviews constituted a "flip of a coin" scenario. Plaintiffs have failed to provide legal authority for the proposition that they have a right to a clemency hearing, much less to demand that said clemency hearings must be completed by December 28, 2023. The Board contends Plaintiffs' allegations are factually "*identical*" to those addressed in *Faulder* and should be similarly rejected.[50]

Regarding the allegations of AG Landry's "collusion and overreach," the Board disputes Plaintiffs' factual assertions but also argues that, even if Plaintiffs' allegations were true, the conduct attributed to the Board and AG Landry does not rise to the high standard required for the grant of a preliminary injunction. The Board presents jurisprudence contrary to Plaintiffs' position that AG Landry's purported blanket objection to clemency rises to the level of a constitutional violation. Further, Plaintiffs have presented no evidence that they have been deprived of due process in the consideration of their clemency applications based on any alleged conduct of AG Landry.

Regarding irreparable harm, the Board notes that none of the Plaintiffs are scheduled for execution, and this Court recently dismissed an action challenging Louisiana's lethal injection protocol because the state has been unable to obtain execution drugs.[51] Thus, there is no imminent threat that any Plaintiff will be executed before they have an opportunity to apply for clemency under the governing law and regulations. Further, the Board cites numerous federal court decisions across the country that have held that there is no irreparable injury when a clemency hearing is re-set or

---

[50] *Id.* at

[51] *See Hoffman v. Jindal*, No. CV 12-796-SDD-EWD, 2022 WL 969050 (M.D. La. Mar. 30, 2022), *reconsideration denied*, No. CV 12-796-SDD-EWD, 2022 WL 16571312 (M.D. La. Nov. 1, 2022).

does not occur on a desired timeline.[52]    Notably, in *Turner Indus. Grp., LLC v. Rain CII Carbon LLC*, the federal district court for the Eastern District of Louisiana rejected the proposition that the alleged "arbitrary changing of a hearing date less than two weeks before a hearing" constituted a due process violation sufficient to grant injunctive relief.[53]

The Board contends Plaintiffs have submitted no evidence that their clemency applications will be summarily rejected or that their administrative reviews will be unfair or impartial: "The Plaintiffs['] position that they are entitled to have a guaranteed clemency hearing, to be conducted by a certain date less than two months from now, is contrary to all law."[54]  Moreover, the Board highlights the Governor's request that the Board manage these capital cases "in a manner least disruptive to the non-capital cases currently pending before the Board."[55]  The Board maintains that it has attempted to accommodate the Governor's request, but "the flurry of litigation and legal chess-match which followed has resulted in the delay of over forty hearings of non-capital prisoners, who have the same right to clemency consideration as the Plaintiffs, and who initiated their requests long before the Plaintiffs."[56]  Accordingly, given that none of the Plaintiffs have a scheduled execution date, the Court should deny injunctive relief for Plaintiffs' failure to present an imminent threat of harm. If the Court granted the requested injunctive relief,

---

[52] Rec. Doc. 25, p. 16 (citing *Baker v. Ivey*, No. 2:22-CV-375-RAH-SMD, 2023 WL 5499872 (M.D. Ala. June 23, 2023), *report and recommendation adopted*, No. 2:22-CV-375-RAH-SMD, 2023 WL 5493532 (M.D. Ala. Aug. 24, 2023)(Parole Board's failure to provide a parole hearing date does not constitute a due process violation); *Carter v. Hartley*, No. 1:12-CV-00829-JLT, 2012 WL 1898929 (E.D. Cal. May 23, 2012)(Parole Board's failure to set a hearing date within 5 years is not a due process violation); *Randall v. Utah Bd. of Pardons & Parole*, No. 4:22-CV-27 DN, 2023 WL 5000993 (D. Utah Aug. 4, 2023)(Parole Board's scheduling of hearing in 2039 not a due process violation for purposes of injunctive relief); *Johnson v. Duffy*, No. 2:13-CV-1962 DAD P, 2014 WL 3956689 (E.D. Cal. Aug. 13, 2014)(Parole Board's refusal to advance hearing date after request by inmate does not constitute a due process violation).
[53] No. CIV.A. 14-1031, 2014 WL 1870622 at FN. 13 (E.D. La. May 8, 2014).
[54] Rec. Doc. 25, p. 17.
[55] Rec. Doc. 3-3.
[56] Rec. Doc. 25, p. 17.

the Board posits that its growing backlog of non-capital cases would continue to grow and the process for those applicants would be sidelined for months.  Denying the injunctive relief would only result in the Plaintiffs waiting "their respective turns for fair and impartial consideration of their applications."[57]

Finally, the Board argues that injunctive relief would disserve the public interest by enjoining a legally imposed sentence on a convicted person.  The Board relies on the Fifth Circuit decision in *United States v. Vialva*, holding that the public's interest in timely enforcement of the death sentence outweighs the plaintiff's request for more time.[58]

## III.    PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.[59]   A plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest.[60]   Notably, "'[f] the movant fails to meet its burden regarding any one of the necessary elements, a court need not address the other elements necessary for granting a preliminary injunction.'"[61]

---

[57] *Id.* at p. 18 (citing Rec. Doc. 25-2, ¶ 9).
[58] 976 F.3d 458 (5th Cir. 2020)(citing *Calderon v. Thompson*, 523 U.S. 538, 556, 118 S. Ct. 1489, 1501, 140 L.Ed.2d 728 (1998) (stating that delay "inflict[s] a profound injury to the 'powerful and legitimate interest in punishing the guilty,' an interest shared by the State and the victims of crime alike") (quoting *Herrera v. Collins*, 506 U.S. 390, 421, 113 S. Ct. 853, 871, 122 L.Ed.2d 203 (1993) (O'Connor, J., concurring)).
[59] *Munaf v. Geren*, 553 U.S. 674, 689, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008).
[60] *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).
[61] *TWTB, Inc. v. Rampick*, 152 F.Supp.3d 549, 558 (E.D. La. 2016)(quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir.1990) (declining to address the remaining elements necessary to obtain a preliminary

The decision to grant or deny a preliminary injunction is discretionary with the district court.[62] However, because a preliminary injunction is an extraordinary remedy, it "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements."[63]  Consequently, the decision to grant a preliminary injunction "is the exception rather than the rule."[64]

The purpose of a preliminary injunction is limited to preserving the relative positions of the parties until a trial on the merits can be held.[65]  "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."[66]  For this reason, the findings of fact and conclusions of law made by a court deciding whether to grant a preliminary injunction are not binding at trial on the merits.[67]

## IV.    SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs cannot prevail on their Motion for Preliminary Injunction because the law of the United States, the Fifth Circuit, and the Middle District of Louisiana unequivocally establishes that there is no constitutional right to a clemency hearing for a death row inmate. Plaintiffs casually dismiss as "mostly inapplicable" the host of cases from and within the Fifth Circuit explicitly rejecting the arguments Plaintiffs have asserted herein.[68]

---

injunction after finding that plaintiff failed to show a substantial likelihood of success on the merits); *see also Barton v. Huerta*, 613 Fed.Appx. 426, 427 (5th Cir.2015) ("[F]ailure to succeed one any one of the elements results in a denial of injunctive relief.")).

[62] *Miss. Power & Light Co. v. United Gas Pipe Line Co*., 760 F.2d 618, 621 (5th Cir. 1985).
[63] *Suehs*, 692 F.3d at 348.
[64] *Miss. Power & Light Co*., 760 F.2d at 621.
[65] *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).
[66] *Id*.
[67] *Id*.
[68] Rec. Doc. 29, p. 5.

To the contrary, the Court finds these cases directly applicable and counter to Plaintiffs' unsupported legal conclusions.

In 1998, the United States Supreme Court held in *Ohio Adult Parole Authority v. Woodard*[69] that Ohio's clemency procedures did not violate the Constitution; Justice O'Connor's concurrence (providing the fifth vote) stated that only "*minimal* procedural safeguards apply to clemency proceedings."[70] Justice O'Connor suggested relief "*might*, for example, be warranted in the face of a [clemency] scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner *any* access to its clemency process."[71]

Thereafter, in accordance with Justice O'Connor's position in *Woodard*, the Fifth Circuit ruled in *Faulder v. Texas Board of Pardons and Paroles* that minimal procedural safeguards in the clemency process are required.[72]   However, the *Faulder* court specifically held that **allegations that "the Board ... violated state law and its own regulations" was not an example of the type of "extreme situation[ ]"** referred to by Justice O'Connor in her concurring opinion in *Woodard*.[73]   The court also noted that, because clemency "decisions are not traditionally the business of courts," there is an extremely "low threshold of judicial reviewability."[74]

---

[69] 523 U.S. 272, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998).
[70] *Id.* at 289, 118 S.Ct. 1244 (O'Connor, J., concurring)(emphasis in original).
[71] *Id.* (emphasis added).
[72] *Faulder v. Tex. Bd. of Pardons & Paroles*, 178 F.3d 343, 344 (5th Cir.), *cert. denied*, 527 U.S. 1017, 119 S.Ct. 2362, 144 L.Ed.2d 767 (1999) (stating clemency process requires minimal procedural safeguards).
[73] 178 F.3d at 344–45 (citing *Woodard*, 523 U.S. at 289, 118 S.Ct. 1244 (O'Connor, J., concurring)); *see also Tamayo v. Perry*, 553 F. App'x 395, 402 (5th Cir. 2014) (holding no procedural due process violation where Board members allegedly communicated with interested parties in violation of the Board's own rules)(emphasis added).
[74] *Id.*

In *Sepulvado v. Louisiana Bd. Of Pardons and Parole*,[75] the Fifth Circuit again addressed a constitutional challenge to Louisiana's clemency process.  The plaintiff, a death-row prisoner, sued under Section 1983, alleging that Louisiana's clemency procedure violated the Eighth and Fourteenth Amendments.  Specifically, the plaintiff's complaint sought "to distinguish Louisiana's clemency procedure from those in other States, claiming, *inter alia*, because Louisiana law does *not guarantee* a clemency hearing, its procedure falls below the minimum due-process threshold."[76]  The Fifth Circuit rejected this argument stating that, "[o]ther cases involving constitutional challenges to clemency procedures, including *Woodard* and *Faulder*, however, do *not* establish specific requirements States must follow."[77]  Because "Louisiana state law allows every inmate to apply for clemency (which Sepulvado did)," the court held that the plaintiff failed to state a claim.[78]

The court further explained the clemency process in Louisiana, noting that "[t]he Governor may commute a sentence only upon the Board's recommendation."[79] The court noted that "[t]he Board has discretion to grant a clemency hearing; Louisiana law lists eight reasons for which the Board, in its discretion, may deny one."[80]  The plaintiff's application "was denied, without a hearing, for two of § 105's listed reasons: (1) because his offense was serious in nature; and (2) because he had not served sufficient time."[81]  In rejecting the plaintiff's claims, the court explained:

> Sepulvado **was allowed to apply for clemency**, and the complaint does not allege the Board **failed to consider his application before denying it**.

---

[75] 171 Fed. Appx. 470 (5th Cir. 2006).
[76] *Id.* at 472 (emphasis in original).
[77] *Id.* (emphasis in original).
[78] *Id.*
[79] *Id.* (citing La. Const. art. IV, § V; La.Rev.Stat. Ann. § 15:572).
[80] *Id.* (citing La. Admin. Code tit. 22, § V.105.
[81] *Id.*

Instead, Sepulvado makes a facial challenge to the procedure. His complaint alleges, for example, the Governor rarely grants clemency to violent offenders; this, however, does not state a claim for a due-process violation.

Sepulvado contends dismissal was inappropriate because, without discovery, he cannot determine whether clemency was denied arbitrarily, possibly even based on the coin-flip example in Justice O'Connor's concurring opinion in Woodard. Sepulvado's complaint, however, does not allege he was denied clemency in that fashion; and, as discussed earlier, we are confined to reviewing only the complaint when considering a Rule 12(b)(6) motion.

In the light of the allegations in the complaint, Sepulvado had **full access to the clemency process**, and the Board considered his application before denying him a clemency hearing. Under the highly deferential *Faulder* standard of review, Sepulvado does not state a due-process-denial claim for which relief can be granted.[82]

More recently, in 2018, the Fifth Circuit reviewed a similar claim brought under Section 1983 alleging that the Texas Board of Pardons and Paroles violated the plaintiff-inmate's Fourteenth Amendment due process rights.  In *Garcia v. Jones*,[83] the plaintiff alleged that the Board's composition violated his constitutional rights because "the Board as currently constituted violates the requirement under Texas Government Code § 508.032(a) that the Board be 'representative of the general public' because six of the seven Board members are former employees of the Texas Department of Criminal Justice or former law enforcement officers and six of the seven Board members are male."[84]  The plaintiff moved for a preliminary injunction to bar the Board from making a recommendation and an order staying his execution.[85]

---

[82] *Id.* at 473 (emphasis added). The Court denied the plaintiff's Eighth Amendment claim for the same reasons.
[83] 910 F.3d 188 (5th Cir. 2018).
[84] *Id.* at 189.
[85] *Id.* at 189-90.

The court began: "Though we lack jurisdiction to consider a claim requesting that we order the Board to recommend clemency, we have jurisdiction to consider challenges to state clemency proceedings when the relief the party seeks 'will not spell speedier release.'"[86]   The court continued: "Garcia does not assert a constitutional entitlement to clemency, and it is well-established that no such right exists.[87]  Instead, Garcia asserts an entitlement under due process to minimal procedural safeguards in clemency proceedings."[88]

The court also relied upon its reasoning in *Faulder*, finding that "Garcia's argument that the Board's composition violates Texas law does not assert an arbitrary clemency proceeding akin to the flip of a coin or a complete denial of access to the clemency process."[89]  Additionally, "Garcia's allegations do not reflect the **complete lack of process that we have held may violate the minimal due process protections that exist in the clemency context** … Accordingly, the district court did not err in denying Garcia's motion preliminary injunction."[90]  "For the same reason—because Garcia has not alleged a violation of the Constitution or laws of the United States—the district court correctly dismissed Garcia's § 1983 complaint on the merits."[91]

---

[86] *Id.* at 190 (quoting *Young v. Gutierrez*, 895 F.3d 829, 831 (5th Cir. 2018) (finding jurisdiction over a challenge to state clemency proceedings that would "result only in a stay until [the § 1983 claimant] is afforded a clemency proceeding commensurate with the Constitution")).

[87] *Id.* at 190-91 (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464, 101 S.Ct. 2460, 69 L.Ed.2d 158 (1981) ("[A]n inmate has 'no constitutional or inherent right' to commutation of his sentence." (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979))); *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 280–82, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (applying *Dumschat*'s reasoning to a death row inmate's petition for clemency).

[88] *Id.*

[89] *Id.* at 191 (citing *Faulder*, 178 F.3d at 344 (citing *Woodard*, 523 U.S. at 289, 118 S.Ct. 1244 (O'Connor, J., concurring))).

[90] *Id.* (emphasis added).

[91] *Id.* (citing *Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) (noting that § 1983 "provides a remedy for the violation ... of rights secured under the Constitution and laws of the United States" (quoting *Kirchberg v. Feenstra*, 708 F.2d 991, 1000 (5th Cir. 1983)))).

Louisiana's federal district courts have applied the jurisprudence above in challenges to the state's clemency process.  In *Hoffman v. Cain*,[92] among numerous challenges to his conviction and sentence, a death-row inmate also alleged that Louisiana's clemency process violated his constitutional rights.[93]  The plaintiff argued that Louisiana's clemency process failed "to meet the minimal requirements of due process because: **(1) it requires death row inmates to file an application within one year of direct appeal**, (2) it requires statements of all witness in favor of a condemned inmate to be made public but statements opposed to be keep private, (3) **it does not guarantee a clemency hearing and provides no opportunity to be heard and argue for one**, (4) it restricts evidence allowed in the application, and (5) it restricts the number of witnesses that may testify at a hearing."[94]  The court summarily rejected this argument, relying on the Fifth Circuit's holding in *Sepulvado*.[95]

In 2018, this Court issued a thorough opinion in a case involving similar claims as those presented here.  In *Thompson v. Ranatza*,[96] a *pro se* inmate raised a constitutional challenge under Section 1983 arguing that his rights were violated because the Louisiana Board of Pardon and Parole failed to properly evaluate and consider his past history, his prison record, and his achievements during the period of his incarceration in assessing his 2016 application for a "full pardon."[97]  Of particular note, the plaintiff claimed that the Board failed to comply with its applicable procedural rules governing documentation to be

---

[92] No.  2012 WL 1088832 (E.D. La. Mar. 30, 2012).
[93] *Id.* at *33.
[94] *Id.* (Emphasis added).
[95] *Id.*
[96] No. 17-0235-JWD-EWD, 2018 WL 4214412 (M.D. La. Aug. 17, 2018).
[97] *Id.* at *1.

considered with his pardon application.[98] In response, the Board filed a Motion to Dismiss for failure to state a claim.[99]

The Court concluded that the plaintiff failed to state a claim for a number of reasons. First, "with regard to Plaintiff's assertion that Defendant Ranatza has failed to follow state procedural rules by failing to obtain or secure required reports and documentation relative to Plaintiff's history and purported rehabilitation, a federal court does not concern itself with claims that a state official has failed to correctly follow state law. Specifically, under § 1983, a federal court is solely concerned with claims involving the alleged violation of federal law or the deprivation of rights secured by the United States Constitution."[100] Second, the Court found that the "plaintiff misinterpreted the procedural rules governing pardon applications in any event" noting that the Board "had discretion to request or obtain documentation regarding Plaintiff's pertinent history in evaluating his pardon application but was not required to do so."[101] Third, the Court held that, even if the Defendant failed in some way to follow appropriate state procedures in handling the plaintiff's application, "a federal district court lacks jurisdiction to review actions in the nature of mandamus to compel state officers or employees to perform duties owed the plaintiff."[102]

The Court also found that the plaintiff's substantive due process claim "fare[d] no better."[103] The Court relied on language from the Eastern District of Louisiana in

---

[98] *Id.*

[99] *Id.*

[100] *Id.* at *2 (emphasis added).

[101] *Id.* (citing *Richey v. Hunter*, 407 So.2d 427, 430 (La. App. 1 Cir. 1981) (concluding that the Board of Pardon has discretion to deny pardon applications without scheduling a hearing and that such denials do not violate state or federal due process requirements)).

[102] *Id.* (citing *Samuels v. Emanuel*, No. 13-2775-P, 2014 WL 50851, *2 (W.D. La. Jan. 7, 2014)(citing *Rothstein v. Montana State Supreme Court*, 637 F. Supp. 177 (D. Mont. 1986))).

[103] *Id.* at *3.

*Robinson v. Cain*, wherein the court stated: "Generally, a prisoner has no cognizable liberty interest in meaningful access to state clemency mechanisms."[104]

> Simply put: "[A] prisoner has no liberty interest with respect to any procedures available to vindicate an interest in state clemency because **clemency is inherently discretionary and subject to the whim, or grace, of the decisionmaker; it is, in other words, a form of relief to which a prisoner has no right**."[105]

Applying the foregoing jurisprudence to the facts in *Thompson*, the Court noted that "the decisional law in this area, however, does not delimit any specific procedures that a State must follow in evaluating such an application, and it is clear that there is an 'extremely low threshold of judicial reviewability' in the consideration thereof."[106]  Further,

> [A]lthough Plaintiff had the right to have his pardon application evaluated and to have it not be rejected arbitrarily (as by the mere flipping of a coin, for example), it is clear that **Plaintiff did not have a right to a hearing and did not have a right to any specific procedures in the evaluation thereof.** Accordingly, in the absence of any allegations of fact suggesting that the Board of Pardons failed to review and consider his application before rejecting it, this claim is lacking in constitutional merit.[107]

As clearly demonstrated above from the Supreme Court, Fifth Circuit, and Louisiana federal district courts, there is no constitutional right to a clemency hearing, nor is there a right to challenge the Board's failure to follow its own procedures.  Plaintiffs have presented no evidence that they have been denied access to Louisiana's clemency

---

[104] *Id.* (quoting *Robinson v. Cain*, No. 14-1029, 2015 WL 770458, *3 (E.D. La. Feb. 23, 2015)(citing *McKithen v. Brown*, 626 F.3d 143, 151 (2nd Cir. 2010))).

[105] *Id.* (quoting *Robinson*, 2015 WL 770458 at *3 note 23 (quoting *McKithen*, 626 F.3d at 151; *Brady v. Norris*, No. 5:08cv00147, 2008 WL 5002929 (E.D. Ark. Nov. 20, 2008) (noting that a prisoner "has no federal or state liberty interest in the possibility of obtaining parole, furlough or clemency, or any type of early release, and he is thus not entitled to any due process protections in connection with diminishment of those possibilities"))(emphasis added).

[106] *Id.* (quoting *Sepulvado*, 171 Fed. Appx. 470 (citing *Faulder*, 178 F.3d 343)).

[107] *Id.* (citing *Sepulvado*, 171 Fed. Appx. 470)(explaining Louisiana's clemency procedures and rejecting a prisoner's challenge to the procedures in the absence of an allegation that his application had not been evaluated in fact or had been denied arbitrarily)).

process and no evidence that converting a hearing to an administrative review amounts to a constitutional violation; indeed, it is still access. There is no evidence before the Court that the Board has or intends to arbitrarily reject a clemency application. Setting administrative reviews and/or hearings within the applicable time frame is not a violation of Plaintiffs' rights.  The Governor's letter demonstrates his understanding when he asked the Board to manage these cases "in a manner least disruptive to the non-capital cases currently pending before the Board."[108]

Plaintiffs' reliance on the recent Fifth Circuit decision in *Galbraith v. Hooper*[109] is misplaced. *Galbraith* is easily distinguished from the present case.  In *Galbraith*, the circuit affirmed the district court's finding that the plaintiff had a liberty interest in parole that had been granted and then rescinded two days prior to his effective release date.  The district court found that, "Although Galbraith did not have a liberty interest in the granting of parole, there was a state-created liberty interest at issue here because the Parole Board regulations in effect at the time permitted rescission of a parole grant only in two circumstances, neither of which was applicable to Galbraith's situation," and thus, "Galbraith was therefore entitled to notice and a meaningful opportunity to be heard prior to rescission of his parole grant, but he received neither."[110]   The Fifth Circuit distinguished the facts of *Galbraith* from cases that the defendant relied upon, noting the following distinction:

> Galbraith's case significantly differs from Sinclair's — most clearly in the fact that his petition for parole was granted, not denied. Galbraith had a parole hearing and was granted a Certificate of Parole. The Parole Board set his release date and arranged with the State of Texas to have Galbraith serve

---

[108] Rec. Doc. 29-3, p. 1.
[109] --- F.4th ---, 2023 WL 6968754 (5th Cir. 2023).
[110] *Id.* at *4.

his parole there. Galbraith's parole grant was rescinded two days prior to his release for a reason that appears unauthorized by statute at the time.[111]

The Court further noted that jurisprudence concerning "non-grantees" was "not instructive of whether a parole grantee—such as Galbraith—has a protected liberty interest."[112]

The present case does not involve the grant and subsequent rescission of parole without notice and an opportunity to be heard.  Galbraith's claim was different because he had achieved success that was then taken away without due process and for reasons not allowed by the law.  No success has been achieved by the Plaintiffs herein, and the law is well-established that they are not entitled to clemency hearings or preferred timing in the evaluation of their applications upon administrative review.  *Galbraith* is entirely inapplicable here.

The Court does not reach Plaintiffs' claims that the Board colluded with AG Landry to "interfere" with the Governor's exclusive executive powers enumerated in the Louisiana state constitution.  The Court finds that Plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of a federal constitutional claim.  The parallel proceeding remains pending in state court; the state court is imminently qualified to determine whether any separation of powers violations have occurred under the Louisiana state constitution, and the Court will abstain from providing an advisory opinion in that regard.

## V.    IRREPARABLE HARM

"'Irreparable harm requires a showing that: (1) the harm to Plaintiff[ ] is imminent (2) the injury would be irreparable and (3) that Plaintiff[ ] ha[s] no other adequate legal

---

[111] *Id.* at *8.
[112] *Id.* at *10.

remedy.'"[113]    The Court finds that Plaintiffs have failed to demonstrate that the harm is imminent.  As the Board noted, none of the Plaintiffs are scheduled for execution, and the state of Louisiana has been unable to obtain lethal injection drugs for several years. There is absolutely no evidence before the Court that any Plaintiff will face execution before he or she is able to apply for clemency. There is no right to a clemency hearing during any particular administration.

Additionally, Plaintiffs turn the law on its head, arguing that they "face a real possibility of death if this preliminary injunction is not granted," and denying this relief subjects them to "the increased risk of execution of some or all Plaintiffs."  In *Woodard*, the United States Supreme Court, relying on its own precedents, stated:

> The individual's interest in release or commutation "'is indistinguishable from the initial resistance to being confined,'" and that interest has already been extinguished by the conviction and sentence. *Id.*, at 464, 101 S.Ct. at 2464 (quoting *Greenholtz*, *supra*, 442 U.S. at 7, 99 S.Ct. at 2103). The Court therefore concluded that a petition for commutation, like an appeal for clemency, "**is simply a unilateral hope**." 452 U.S. at 465, 101 S.Ct. at 2465.[114]

The *Woodard* Court further stated: "Respondent is already under a sentence of death, determined to have been lawfully imposed. If clemency is granted, he obtains a benefit; if it is denied, he is no worse off than he was before."[115]

Having failed to establish a substantial likelihood of success on the merits or imminent irreparable harm, Plaintiffs have failed carry their burden for the issuance of a preliminary injunction.

---

[113] *J.H. by and through N.H. v. Edwards*, 2020 WL 3448087 at *44 (quoting *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006) (citing *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975))).
[114] *Woodard*, 523 U.S. at 280 (emphasis added).
[115] *Id.* at 285 (emphasis added).

## VI.    CONCLUSION

Considering the foregoing law and analysis, the Court DENIES Plaintiffs' *Motion for Preliminary Injunction*.[116]

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  9th  day of November, 2023.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[116] Rec. Doc. 3.